# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. McGREAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12 cv 05135 |
| ) | |
| THE VILLAGE OF ORLAND PARK, and ) | |
| TIMOTHY McCARTHY, and ) | Hon. Joan Humphrey Lefkow, |
| THOMAS KENEALY, and ) | Judge Presiding. |
| PATRICK DUGGAN, and ) | |
| JOSEPH MITCHELL, and ) | Hon. Sidney I. Schenkier, |
| ANTHONY FARRELL, and ) | Magistrate Judge. |
| SCOTT MALMBORG, and ) | |
| JAMES BIANCHI, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

**Plaintiff's Sur-Reply to Defendants' Reply in Support of Motion to Dismiss**

Now comes the Plaintiff, Joseph S. McGreal, by and through his attorneys, John P. DeRose & Associates, and in Sur-Reply to Defendants' Reply in Support of Motion to Dismiss states as follows:

### I. Legal Standard

In *Baird v. Board of Education for Warren Community Unit School District No. 205*, 389 F.3d 685, 690 (7th Cir. Nov. 2004) , the Seventh Circuit Court of Appeals provided in pertinent part:

> There can be no due process without "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). A hearing "appropriate to the nature of the case" must precede the "deprivation of life, liberty or property." *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487 (internal citations omitted).

1

## II. Defendants Failed to Provide Plaintiff with Due Process
### a. The Pretermination Opportunity to Respond

Plaintiff is able to show that Defendants went to extraordinary lengths to deprive him of every aspect of Due Process that he was due including the following:

1. Defendants failed to follow the Illinois Uniform Peace Officers Disciplinary Act when conducting two formal interrogations against Plaintiff,

2. Defendants intentionally withheld exculpatory evidence on several different occasions,

3. Defendants refused to provide Plaintiff with evidence that was to be used against him until the arbitration hearing had already commenced more than six months after his termination,

4. Defendants failed to provide Plaintiff with the required "notice and opportunity to be heard",

5. Defendants failed to provide Plaintiff any fact finding pre-deprivation hearing whatsoever,

6. Defendants failed to advise Plaintiff of which of the many listed violations in the "contemplated disciplinary action" would actually be preferred against him, despite requests of his attorney that they do so, and

7. Defendants later added nine alleged policy violations which were not being considered at the time of the Pre-Disciplinary Meeting and were not included in the April 21, 2010 Notice of "contemplated disciplinary action".

**b. Defendants Failed to Provide Plaintiff with an Adequate Pre-Deprivation Hearing: Notice and an Opportunity to Respond**

The essential requirements of due process are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. Plaintiff was not provided with this fundamental due process requirement.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, (1985), the Supreme Court advised that:

> All the process that is due is provided by a pretermination opportunity to respond, coupled with posttermination administrative procedures as provided by the Ohio statute; since respondents alleged that they had no chance to respond, the District Court erred in dismissing their complaints for failure to state a claim. *Id.,* at 538-548.
>
> The principle that under the Due Process Clause an individual must be given an opportunity for a hearing before he is deprived of any significant property interest, requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. The need for some form of pretermination hearing is evident from a balancing of the competing interests at stake: the private interest in retaining employment, the governmental interests in expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. *Id*., at 542-545.

On January 21, 2010 at 9:00AM Plaintiff was interrogated by representatives of the Village of Orland Park but there was no basis for the interrogation because no complaint had been filed against Plaintiff. Nevertheless, the Village went through with the formal interrogation procedures in an attempt to find any wrong-doing that the Plaintiff may have possibly committed on or off duty for the previous six years.

Plaintiff's attorney in that interrogation, Alan Brunell stated on the record that Plaintiff was not in the interrogation voluntarily. He also stated on the record that he had requested to see any and all documents or evidence prior to the interrogation. However, the exhibits being shown in the interrogation had not been offered to Plaintiff or his attorney and they had not been given an opportunity to review them.

Under 50 ILCS 725/2(d) of the Illinois Compiled Statutes "Interrogation" is defined as the questioning of an officer pursuant to the formal investigation procedures of the respective State agency or local governmental unit ***in connection with an alleged violation*** of such agency's or unit's rules which may be the basis for filing charges seeking his or her suspension, removal, or discharge. The Village interrogated Plaintiff without a connection to any alleged violation. At the time of the interrogation there was neither evidence of nor an affidavit of a complaint against Plaintiff. Of course, that foreclosed Plaintiff from an opportunity to be heard in his own defense the Village later used Plaintiff's statements from that interrogation against him in order to terminate his employment.

On March 5, 2010 Defendant Timothy McCarthy placed Plaintiff on paid Administrative Leave. On April 21, 2010 Defendant McCarthy issued Plaintiff a letter entitled Pre-Disciplinary Meeting.[1]

On April 28, 2010 Plaintiff and Metropolitan Alliance of Police Attorney Steven Calcaterra attended a meeting with Defendant Thomas Kenealy and Defendant Patrick Duggan but it was not a standard Pre-Disciplinary Meeting. Section 19.3 of the Collective Bargaining Agreement requires the Village to provide a Pre-Disciplinary Meeting for the purpose of giving

---

[1] See Exhibit A, Pre-Disciplinary Meeting, dated April 21, 2010.

the employee an opportunity to discuss, rebut, or clarify the reasons for contemplated disciplinary action. However, Plaintiff was not provided with this option. There was no discussion about the charges and the Plaintiff was not allowed to provide any response whatsoever to the allegations he was facing. No discovery, internal affairs reports, memoranda or other documents were provided to Plaintiff or his attorney. Defendants Kenealy and Duggan refused to indicate which allegations were or were not sustained or explain which of the allegations with which Plaintiff would be charged.

Mr. Calcaterra attempted to get the Defendants to comply with the minimum standards of the Collective Bargaining Agreement. However, Defendant Kenealy refused to go through each individual allegation on the Pre-Disciplinary Meeting Notice.[2]

Defendant Kenealy refused to reveal which charges were or were not sustained, the reasons thereof, or the level of disciplinary action that was being sought by the Village. Defendant Duggan also refused to provide this information to Plaintiff or Mr. Calcaterra. Defendant Kenealy indicated to Mr. Calcaterra that the Plaintiff was a liar. Defendant Kenealy admitted that he was not aware of which of the allegations against Plaintiff had even been investigated.

Mr. Calcaterra informed Defendants Kenealy and Duggan that the meeting did not comply to the minimum standards for a Pre-Disciplinary Meeting as required by the Collective Bargaining Agreement. The actions of Defendants Kenealy and Duggan violated the Collective Bargaining Agreement in that they deprived Plaintiff from any meaningful opportunity to informally discuss, rebut or clarify the reasons for contemplated disciplinary action.

---

[2] See Exhibit B, letter from attorney Steven Calcaterra, dated May 3, 2010, and Exhibit C, letter from attorney Steven Calcaterra, dated May 6, 2010.

On June 4, 2010 Defendant McCarthy served Plaintiff with a Charging Document alleging 76 acts of misconduct spanning the prior 11 months. (First Amended Complaint, ¶ 54). The Village of Orland Park Fire and Police Commissioners were presented with a copy of the charges on June 5, 2010. Plaintiff filed a timely grievance to contest the charges.

On June 25, 2010 Plaintiff exercised his contractual right to utilize an impartial member of the National Academy of Arbitrators to act as the trier of facts of the charges lodged against him.

On June 28, 2010 the Village of Orland Park and Chief Timothy McCarthy terminated Plaintiff's employment without having an arbitral hearing or having a finding of 'just cause.' There was no pressing need to terminate Plaintiff's employment at that time due to his status on Administrative Leave. Rather, Defendant McCarthy relied on the department's policy and practice of implementing severe discipline prior to any hearing once an employee requests an arbitration hearing. This policy and practice has occurred in the past when Officer Thomas Antkiewicz was issued a 15 day suspension with no hearing in January 2010, when Plaintiff was terminated with no hearing in June 2010, and will continue into the future. Chief McCarthy testified that the policy and practice is still in effect when he testified in the arbitration hearing on July 18, 2011[3].

The Defendants prevented Plaintiff from obtaining or reviewing the evidence that they used to terminate his employment. As if this intentional deprivation was not bad enough, the

---

[3] Although requested by Plaintiff and his attorney several times from both his Union and from Defendants, Plaintiff's request has been refused and he has been told to purchase it himself, something that he cannot afford to do. It is reasonably believed that now that Plaintiff has filed an appeal of the arbitral decision in the Chancery Division of the Circuit Court of Cook County, Defendants will be obliged to file the Arbitration Transcript of Proceedings, at which time Plaintiff will secure and deliver transcript of proceedings to this Honorable Court.

6

Defendants also withheld exculpatory evidence that would exonerate Plaintiff from the false allegations of which he was accused.

Plaintiff's pay was immediately curtailed and he was summarily terminated without the opportunity to be heard and defend himself.

> The governmental interest in immediate termination does not outweigh these interests. … Affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.
>
> …[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. (Citations omitted).
>
> … The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (Citations omitted).

*Cleveland Board of Education v. Loudermill*, at 544-546.

### III. Plaintiff Was Not Provided an Adequate Post-Deprivation Hearing

In *Larry v. Lawler*, 605 F.2d 954, 959 (7th Cir. 1978.) the Seventh Circuit noted:

> "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168 (71 S.Ct. 624, 95 L.Ed. 817) (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

It is contended that Defendants also violated Plaintiff's constitutional rights with respect to a post deprivation hearing in the following manners:

1. Defendants failed to provide Plaintiff with a prompt post-deprivation hearing,

2. Defendants failed to provide an impartial arbitrator that is a member of the National Academy of Arbitrators as required by the Collective Bargaining Agreement,

3. Defendants allowed the unqualified arbitrator to pre-judge the case without hearing the evidence,

4. Defendants offered a bribe to a Police Officer to provide false testimony against Plaintiff in the arbitration hearing,

5. Defendants provided false, misleading, and obstructionist testimony during the arbitration hearing,

6. Defendants continued to participate in the arbitration even after the arbitrator committed arbitral misconduct by failing to allow relevant evidence into the record,

7. Defendants continued to participate in the arbitration even after the arbitrator refused to recuse himself, instead arguing their belief that Plaintiff waived his rights to a fair hearing, and

8. Defendants refused multiple requests from Plaintiff's attorney to provide an electronic copy of the arbitration hearing transcript.

In *DeVito v. Chicago Park District*, 972 F.2d 851 (7th Cir. 1992), the Seventh Circuit found that a delay of one year from the termination until the post-termination hearing was not excessive. In trying to determine the length of time within which such an administrative proceeding should take place, the Seventh Circuit examined the *Loudermill* decision and said:

> One issue raised in *Loudermill* was whether the administrative proceedings to which Loudermill was entitled took too long. The Court found that Loudermill's recital of the course of proceedings coupled with his conclusion that the lack of speedy resolution denied him due process did not state a claim of constitutional deprivation. The Court explained, "[A]t some point, a delay in the post-termination hearing would become a constitutional violation." *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496. The Court in *Loudermill* did not, however, explain what that point was.

*Id.,* at 855.

Later, in *Baird*, cited supra, the Seventh Circuit Court of Appeals noted:

> We are not persuaded, however, that the Board's procedures were entirely fair. The truncated pre-termination hearing afforded to Baird could comport with due process only if he received full due process promptly after termination. *Id*., at 690.
>
> …
>
> A state law breach of contract action is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing. *Id.* While it does provide a species of due process, a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement. While there is no specific time frame within which a hearing must be held to qualify as "prompt," lack of a speedy resolution to proceedings may result in a denial of due process. *Loudermill*, 470 U.S. at 547, 105 S.Ct. 1487. See also DeVito v. Chicago Park Dist., 972 F.2d 851 (7th Cir.1992) (holding that a post-termination hearing must be "prompt" and that, under guidelines for determining promptness for post-

9

>suspension hearings enunciated in *FDIC v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988), a year's delay in holding a post-termination hearing did not deny a terminated public employee due process). Id., at 692.

Of course, in the instant cause the 2 1/2 year delay, between plaintiff's termination and the decision rendered from his post-deprivation hearing[4] far exceeds the delays previously considered by the court.

Defendants assert[5] that state law permits the Plaintiff to file a mandamus action against the Defendants compelling them to provide him with whatever process he felt he was entitled to. However, mandamus is used only to compel a specific act. In *DeVito v. Chicago Park District*, the Seventh Circuit found:

>"Mr. DeVito persuasively argues that mandamus is used only to compel a specific duty or act, but mandamus does not lie where the order would interfere with the exercise of a discretionary act." See *People v. Schyve*, 112 Ill.App.3d 777, 68 Ill.Dec. 407, 410-411, 445 N.E.2d 1260, 1263-64 (1983), affirmed, *People v. Roush*, 101 Ill.2d 355, 78 Ill.Dec. 349, 462 N.E.2d 468 (1984) (court went beyond its authority in prescribing the exact steps the defendants had to take in executing their duties).

Thus, Plaintiff's due process claim should not be dismissed against all Defendants.

### IV. Mootness and Ongoing Policy Dispute

---

[4] The post-deprivation hearing did not commence until January 26, 2011, seven months after Plaintiff's termination on June 28, 2010. The evidence adduced at the hearing was closed on March 2, 2012. Although the arbitrator was obliged by contract to render his decision within 30 days after the close of evidence or within 30 days after the submission of the briefs (which were submitted on July 6, 2012), a requirement from which no deviation is permitted, the Final Arbitral Decision was not rendered for more than 4 months until November 14 2012.

[5] Defendants' Reply Memorandum, p 8.

Defendants incorrectly argue[6] that Plaintiff does not contest that his claims became moot when the arbitrator issued his ruling on November 14, 2012. After using the "time frame" notion to describe mootness for decades, the Supreme Court has recently recognized that the approach is "not comprehensive." *Friends of the Earth*, 528 U.S. at 190. Specifically, the Court said that the "time frame" conception does not account for some well-established exceptions to mootness—a defendant's voluntary cessation of conduct and situations "capable of repetition, yet evading review." *Id.*

Plaintiff strongly disagrees that his claims are moot and, if allowed, will provide substantial evidence that Defendants engaged in a standard exception to the mootness doctrine: situations *"capable of repetition, yet evading review." Milwaukee Police Association V. Board of Fire and Police Commissioners of the City of Milwaukee*, ___F.3d___, No. 11-2314. (7th Cir. Feb. 2013.)

In *Milwaukee Police Association,* the Seventh Circuit noted that the police union, the MPA was without standing to sue because the police officer plaintiff could not establish standing in her own right to bring suit. Of course, Plaintiff in the instant cause has established standing in his own right. The *Milwaukee Police Association* Court noted:

> Our mootness inquiry, however, is not complete. Some cases hold that disputes over an ongoing policy may continue, even after the specific offense precipitating the suit has become moot. See, e.g., Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 121-24 (1974); Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 321 (D.C. Cir. 2009); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1118 (9th Cir. 2003). In those cases, if a litigant challenges the policy through a declaratory judgment, then the case should proceed when "`the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[6] Defendants' Reply Memorandum, p.2.

> interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Super Tire Eng'g Co., 416 U.S. at 122 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In addition, the ongoing policy must be a "continuing and brooding presence" that "casts . . . a substantial adverse effect on the interests of the petitioning parties." Id.
>
> Even though intervening events had settled the act precipitating the suit, the case was not moot because "the challenged governmental activity . . . has not evaporated or disappeared, and, by its continuing and brooding presence, casts . . . a substantial adverse effect on the interests of the petitioning parties." Id. The Court also found that the case fit within the "capable of repetition, yet evading review" exception, but that was merely an alternative holding. Id. at 125-26.
>
> To qualify for that mootness exception, the ongoing policy must "by its continuing and brooding presence, cast[ ] . . . a substantial adverse effect on the interests of the petitioning parties." Super Tire Engineering Co., 416 U.S. at 122.
>
> As discussed, the MPA has not proffered any other member who is faced with [Plaintiff's] predicament. Further still, the MPA has not referenced someone who was in that position previously, which implies that [Plaintiff] was merely trapped in a sparsely populated limbo. The MPA has not even pled a single injury-in-fact. As such, the MPA has given us no reason to find the continuing policy a "brooding presence" over it, much less one with a "substantial adverse effect."

In the present case Plaintiff does proffer other members who were faced with his predicament, and obviously will be so effected in the future. Additionally, the Defendants have provided sworn testimony in the arbitration hearing which confirms that the disputed policy is still an active policy relied on by the Village.

According to Defendants[7], the second inquiry under *Milwaukee Police Ass'n* regards whether or not there is an ongoing policy at issue that would warrant the court making a declaratory judgment to prevent the possibility of repetition. Plaintiff respectfully request the opportunity to show that Defendants' actions are part of an ongoing policy that has happened

---

[7] Defendants' Reply Memorandum, p.3.

12

before to other officers, has happened to him, and will indeed happen again in the future if the court does not make a judgment to prevent the possibility of repetition. The ongoing policy at issue is Defendants' enforcement of severe discipline against employees with no pre-deprivation hearing whatsoever and no guarantee of a prompt, *meaningful and unbiased* post-deprivation hearing.

  WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an order denying Defendant's Motion to Dismiss the First Amended Complaint filed in this cause.

                Respectfully submitted,

                s/ John P DeRose
                John P. DeRose

John P. DeRose
John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, IL 60521
(630) 920-1111 office
(630) 920-1170 fax
john@johnderoselaw.com