| | | |
|---|---|---|
| JOSEPH S. MCGREAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 5135 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| THE VILLAGE OF ORLAND PARK, | ) | |
| TIMOTHY MCCARTHY, THOMAS | ) | |
| KENEALY, PATRICK DUGGAN, JOSEPH | ) | |
| MITCHELL, ANTHONY FARRELL, SCOTT | ) | |
| MALMBORG, TIMOTHY MCCORMICK, | ) | |
| and JAMES BIANCHI, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Joseph McGreal filed a first amended complaint against defendants the Village of Orland Park ("the Village"), and Timothy McCarthy, Thomas Kenealy, Patrick Duggan, Joseph Mitchell, Anthony Farrell, Scott Malmborg, Timothy McCormick, and James Bianchi (collectively, the "individual defendants"), members of the Orland Park Police Department (the "Police Department").[1]  In his ten-count first amended complaint, McGreal alleges that he was terminated without due process in violation of the Fourteenth Amendment and that he was retaliated against in violation of the First Amendment.  He also has alleged state law claims for tortious interference with advantageous business relations, breach of contract, and intentional infliction of emotional distress.  McGreal seeks a declaratory judgment regarding the construction of a collective bargaining agreement and the conduct of the arbitration hearing and seeks recovery from the Village under theories of *respondeat superior* and indemnification.

---

[1] The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper under 28 U.S.C. § 1391.

Before the court is defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, their motion [#59] is granted in part and denied in part.

## LEGAL STANDARD

Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute. The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If subject matter jurisdiction is not evident from the face of the complaint, the court analyzes the motion to dismiss under Rule 12(b)(1) as any other motion to dismiss and assumes for purposes of the motion that the allegations in the complaint are true. *Id.* Where, as here, however, "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion." *Id.*

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v.

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl. Corp.* v.

*Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the

complaint must be "enough to raise a right of relief above the speculative level." *Twombly*,

550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v.

*Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010). Rather, it is the facts that count.

## BACKGROUND[2]

McGreal began working as a full-time, sworn Orland Park police officer on January 10,

2005 after graduating from the Chicago Police Academy as the valedictorian of his class.

McGreal's performance evaluations consistently indicated that he met or exceeded the Police

Department's standards.

At some point after he began working for the Police Department, McGreal was elected

secretary of the Metropolitan Alliance of Police #159 ("M.A.P. 159"), the union representing the

Village's police officers. As a M.A.P. 159 member, McGreal represented union members during

disciplinary proceedings, filed union grievances to resolve contract disputes with the Village, and

attended Village meetings on the union's behalf. On November 2, 2009, McGreal attended a

Village board meeting during which, as both a M.A.P. 159 representative and a private citizen,

he spoke against the Village's plan to lay off up to seven police officers in an attempt to

---

[2] The following facts are taken from the first amended complaint and attached exhibits and are presumed true for the purpose of resolving the present motion. *See Barnes* v. *Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The court may consider the arbitrator's decision in deciding defendants' Rule 12(b)(1) motion. *See United Phosphorous*, 322 F.3d at 946. The court takes judicial notice of the filings defendants have attached to their motion to dismiss and reply, as these are matters of public record. *See Ennenga* v. *Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

eliminate the Village's 2010 budget operating shortfall. Although no police officers were

permanently laid off, budget cuts were instated and the Police Department supervisors' salaries

and benefits were reduced.

After these salary reductions, McCarthy, the police chief, directed the other individual

defendants, all Police Department supervisors, to interrogate McGreal. McGreal was accused

without substantiation of violating departmental policies. Police Department policies were also

enforced inequitably against him in comparison to other similarly situated employees. McGreal

responded by filing two formal complaints that he was being subjected to a hostile work

environment. McCarthy and Stephana Przybylski, the Village's human resources director,

received the complaints. Duggan was initially ordered to investigate McGreal's complaint, but

that order was rescinded. The Village then conducted an investigation and found no misconduct.

McGreal filed a FOIA request to review the investigation, which the Village denied. McGreal

appealed the denial to the Public Access Counselor of the Office of the Illinois Attorney General.

The Village was thereafter ordered to comply with McGreal's FOIA request but it nonetheless

refused to release the documents.

On December 22, 2009, M.A.P. 159 filed an unfair labor practice charge against the

Village on McGreal's behalf, alleging twelve violations of the Illinois Public Labor Relations Act

as well as disparate treatment. Subsequently, on January 21, 2010, the Village conducted a

formal interrogation of McGreal without alleging or advising him of any violations. McGreal's

counsel was not allowed access to documents related to the Village's investigation prior to the

interrogation. On March 5, 2010, McCarthy ordered that McGreal be interrogated again and also placed him on administrative leave. The second interrogation, led by McCarthy, Duggan, and Thomas Melody, an attorney, occurred on March 24, 2010. On April 9, 2010, McCarthy then offered McGreal three or four years of salary and benefits if McGreal agreed to resign as a police officer. Another meeting occurred on April 28, 2010, with Kenealy, Duggan, McGreal, and McGreal's counsel in attendance. No allegations or charges were discussed at that time, nor was any discovery provided to McGreal.

On June 3, 2010, McCarthy ordered McGreal to submit a report detailing the alleged acts of misconduct the individual defendants committed, and McGreal provided an eight-page report the following day. McGreal then received a list of charges alleging seventy-six acts of misconduct he had committed over the past eleven months. The charges were also presented to the Village Board of Fire and Police Commissioners on June 5, 2010. The Board was to hold a hearing within thirty days, but before that could take place, McGreal filed a grievance contesting the charges and, on June 25, 2010, invoked his right to arbitrate the charges under the collective bargaining agreement ("CBA") between M.A.P. 159 and the Village. McGreal was terminated on June 28, 2010.

Under the CBA, if the union and Village did not agree to an arbitrator within five days of the arbitration request, a list of arbitrators was to be provided by the Federal Mediation and Conciliation Service. The potential arbitrators were to be members of the National Academy of Arbitrators in the Midwest region. Dennis Stoia, who McGreal later learned was not a member

of the National Academy of Arbitrators, was selected as the arbitrator for McGreal's hearing from this list. The arbitration hearing began on January 26, 2011. Testimony was heard on seventeen days over a course of fourteen months. The defendant officers testified, providing false testimony and fabricating new allegations of misconduct. Before the second day of testimony, on February 8, 2011, Stoia met with counsel for both sides and informed them that he believed McGreal was a liar, despite the fact that McGreal had not yet testified or offered any evidence in his defense. Stoia also met with McGreal and his union counsel that day, repeating that he believed McGreal was a liar and stating that McGreal would not get his job back.

As the hearing continued, McGreal received a signed affidavit from Thomas Antkiewicz, another member of the Police Department, in which Antkiewicz asserted that the Village attorney, through M.A.P.'s chief counsel, offered that if Antkiewicz testified falsely at the hearing against McGreal, the Village would not investigate a disciplinary complaint pending against Antkiewicz. This bribery attempt was brought to Stoia's attention, but Stoia did not allow Antkiewicz to testify to the issue.

On January 6, 2012, McGreal learned that Stoia was not a member of the National Academy of Arbitrators. McGreal then filed a *pro se* motion to stay arbitration, claiming that because Stoia did not meet the CBA's requirements for arbitrators, he lacked subject matter jurisdiction to conduct the hearing. Stoia refused to acknowledge or rule on the motion to stay arbitration. A decision was ultimately rendered on November 14, 2012, in which Stoia found by

a preponderance of the evidence that there was just and sufficient cause for McGreal's termination.

In addition to pursuing the arbitration hearing, McGreal applied for jobs with various other area police departments. The Arlington Heights and Villa Park police departments rejected his applications out of hand due to his termination from the Police Department. Although ranked first on Mokena's eligibility list when there was at least one vacancy, McGreal was not selected after reaching the final step because he failed a background check. McGreal remains unemployed.

## ANALYSIS

I. **Mootness**

Under Article III of the United States Constitution, federal courts have jurisdiction over live cases and controversies. A case becomes moot, however, "when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994). Defendants argue that McGreal's claims that he was improperly terminated without the hearing to which he was entitled and without a finding of just cause are moot because McGreal received the arbitration hearing that he requested and the arbitrator rendered a finding that McGreal was terminated with just cause.[3] This decision renders a request for an injunction ordering such relief moot. *See Medlock* v. *Trs. of Indiana Univ.*, 683 F.3d 880, 882 (7th Cir. 2012). But McGreal is not seeking

---

[3] These claims are asserted in counts I, IV, and V.

an injunction but rather damages for the alleged deprivation of procedural due process.[4] McGreal's damages request is not mooted by the conclusion of the arbitration hearing or the arbitrator's finding that McGreal was terminated with just cause. *See Witvoet ex rel. Witvoet* v. *Herscher Cmty. Unit Sch. Dist. No. 2*, No. 97-CV-2243, 1998 WL 1562916, at *2 (C.D. Ill. May 27, 1998) (where plaintiff seeks monetary compensation for due process violation, "mootness argument is simply without merit since these damages clearly still exist"); *cf. Cent. Soya Co., Inc.* v. *Consolidated Rail Corp.*, 614 F.2d 684, 686–87 & n.4 (7th Cir. 1980) (request for preliminary injunction moot where dispute ended and no incidental damage claims were left to be adjudicated).

McGreal's damages request is limited by the arbitrator's decision. He cannot recover damages for injuries caused by his termination where it has been determined that he would have been terminated had a proper hearing been held prior to that termination. *See Carey* v. *Piphus*, 435 U.S. 247, 260, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). McGreal may, however, be awarded damages for any injury caused by the alleged denial of due process if he can demonstrate that such injury actually was caused by the denial. *Carey*, 435 U.S. at 264; *Alston* v. *King*, 231 F.3d 383, 386 (7th Cir. 2000). For example, McGreal may be entitled to lost pay for the period from which he was terminated through the time when he would have been terminated had proper procedures been followed. *See Nalls* v. *Bd. of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 2007 WL

---

[4] McGreal's request for a declaration in count IV that he could not be terminated without a finding of just cause "by a statutorily authorized trier of fact" is not moot, for this request is not just for a finding but for a finding by an arbitrator authorized by the CBA to make that finding.

1031155, at *5 (N.D. Ill. Mar. 29, 2007) (citing *Patterson* v. *Portch*, 853 F.2d 1399, 1408 (7th Cir. 1988)). At the least, he is entitled to nominal damages for any procedural due process violation. *Carey*, 435 U.S. at 266–67; *see also Prato* v. *Bd. of Educ. of City of Chicago*, 202 F.3d 274 (Table) (7th Cir. 1999) (if sought, nominal damages for procedural errors are available after final discharge decision made); *Dudgeon* v. *Frank*, No. 06-C-0563-C, 2006 WL 3754796, at *3 (W.D. Wis. Dec. 7, 2006) (plaintiff could proceed with procedural due process claim even though hearing had occurred, as nominal damages remained available).

McGreal argues that he was entitled to a hearing prior to being terminated and that the just cause finding must have been made prior to termination. Although he has now been afforded process, he retains the ability to argue that he was entitled to that process prior to the deprivation. On the other hand, defendants may have a defense to McGreal's claims that he was entitled to a pre-termination hearing if they demonstrate exigent circumstances that justified immediate termination. *See Gilbert* v. *Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) ("[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."). But that determination cannot be made on a motion to dismiss. Thus, because McGreal may be entitled to damages for any procedural due process violations, his claims related to the need for a hearing and finding of just cause before termination are not moot.

## II.    Statute of Limitations

Defendants next argue that the statute of limitations bars all allegations of § 1983

violations that occurred prior to McGreal's termination on June 28, 2010.  Although § 1983 does

not impose an express statute of limitations, § 1983 claims are governed by the forum state's

statute of limitations for personal injury claims.  *Henderson* v. *Bolanda*, 253 F.3d 928, 931 (7th

Cir. 2001).  Under Illinois law, that time period is two years.  735 Ill. Comp. Stat. 5/13-202.

McGreal filed suit on June 27, 2012, making any alleged § 1983 violations that occurred prior to

June 28, 2010 time-barred.

McGreal argues that his claims regarding actions that took place prior to his termination

are not time-barred under the continuing violation doctrine.  Under the continuing violation

doctrine, where a series of events injures a plaintiff, he can "reach back" to the beginning of the

wrong "even if that beginning lies outside the statutory limitations period, when it would be

unreasonable to require or even permit him to sue separately over every incident of the

defendant's unlawful conduct."  *Heard* v. *Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001).  The

continuing violation doctrine does not apply to "a series of discrete acts, each of which is

independently actionable, even if those acts form an overall pattern of wrongdoing."  *Hukic* v.

*Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009); *Pruitt* v. *City of Chicago, Illinois*,

472 F.3d 925, 927 (7th Cir. 2006) ("That discrete acts may have been mixed with a hostile

environment does not extend the time . . . .").

McGreal argues that the continuing violation doctrine applies because he was subjected to a hostile work environment.  But McGreal has not brought a hostile work environment claim, instead asserting only retaliation claims.  "[E]ach retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  McGreal's complaint pinpoints the dates of the allegedly retaliatory actions.  The continuing violation doctrine applies to a series of acts "only if their character was not apparent when they were committed but became so when viewed in light of the later acts." *McDonough* v. *City of Chicago*, 743 F. Supp. 2d 961, 970 (N.D. Ill. 2010) (citation omitted) (internal quotation marks omitted) (where evidence showed that plaintiff was aware of retaliatory nature of defendants' actions at the time they occurred, continuing violation doctrine did not apply to time-barred actions).  McGreal recognized these actions as retaliatory at the time they occurred, even filing two formal complaints that he was being subjected to a hostile work environment in addition to an unfair labor practices charge in December 2009.  *See Tinner* v. *United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002) ("[I]f the employee knew, or with the exercise of reasonable diligence should have known, that each act, once completed, was discriminatory, the employee must sue upon that act within the relevant statutory period.").

Thus, only McGreal's claim of retaliatory termination—which defendants acknowledge falls within the statute of limitations—is viable.  *See Thompson* v. *White*, 67 F. App'x 355, 357 (7th Cir. 2003) ("[T]he continuing violation doctrine does not apply to discrete acts of

discrimination that can be pinpointed to a particular day. Thompson could have sued for the allegedly retaliatory employment references when they occurred; he did not need to wait for a pattern of retaliation to unfold." (citation omitted)). Acts that occurred outside the statutory time frame, however, may still be used as background evidence in support of McGreal's timely claim. *Morgan*, 536 U.S. at 113. Thus, although McGreal may only pursue his retaliation claims with respect to his termination and any subsequent events, the court will not strike allegations of events that occurred prior to June 28, 2010, for they may be considered in evaluating McGreal's retaliation and other claims.

## III.   Immunity for Testimony Given Under Oath During the Arbitration Hearing

The individual defendants argue that they are entitled to absolute immunity for any statements they made under oath during the arbitration hearing. It is well established that a witness has absolute immunity from civil liability for the giving of his testimony at trial. *Briscoe* v. *LaHue*, 460 U.S. 325, 332–33, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983). The *Briscoe* court, over dissents by Justices Blackmun, Brennan, and Marshall, refused to recognize an exception for police officer witnesses. *Id.* at 335–36.

Witness immunity has been extended to testimony provided in quasi-judicial and administrative proceedings. *See Bilal* v. *Wolf*, No. 06 C 6978, 2009 WL 1871676, at *7 (N.D. Ill. June 25, 2009) (collecting cases); *Cichowski* v. *Hollenbeck*, No. 05-C-262-C, 2005 WL 1181957, at *2 (W.D. Wis. May 18, 2005) (absolute immunity for witnesses "extends to any hearing before a tribunal which performs a judicial function" (quoting W. Prosser, Law of Torts

§ 94, pp. 826-27 (1941))). Arbitrations like that at issue here have been recognized as quasi-judicial proceedings. *See Hartlep* v. *Torres*, 756 N.E.2d 371, 373, 324 Ill. App. 3d 817, 258 Ill. Dec. 389 (2001) (disciplinary hearing before board of fire and police commissioners was quasi-judicial warranting application of absolute privilege); *Bushell* v. *Caterpillar, Inc.*, 683 N.E.2d 1286, 1288, 291 Ill. App. 3d 559, 225 Ill. Dec. 623 (1997) (arbitral tribunal convened pursuant to collective bargaining agreement was quasi-judicial in nature); *Rolon* v. *Henneman*, 517 F.3d 140, 145–46 (2d Cir. 2008) (extending absolute immunity to witnesses testifying at police disciplinary hearings and arbitrations that are "conducted in a manner equivalent to that of the judicial process"); *Lettis* v. *U.S. Postal Serv.*, 39 F. Supp. 2d 181, 206 (E.D.N.Y. 1998) (collecting cases). Because the hearing was conducted in a manner equivalent to the judicial process and the witnesses testified under oath, the individual defendants are afforded absolute immunity for their testimony under oath during the arbitration hearing. *Rolon*, 517 F.3d at 146–47.

## IV.    Existence of Adequate Post-Deprivation Remedies for Due Process Violation

To state a claim for violation of procedural due process under the Fourteenth Amendment, a plaintiff must allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz* v. *Vill. of Bedford Park,* 528 F.3d 530, 534 (7th Cir. 2008). Defendants do not dispute that McGreal had a protected property interest, focusing instead on the second inquiry. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful matter.'" *Mathews* v. *Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting

*Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)).  The

right is "flexible, requiring different procedural protections depending upon the situation at

hand."  *Doyle* v. *Camelot Care Ctrs., Inc.*, 305 F.3d 603, 618 (7th Cir. 2002).  Where the

deprivation is random and unauthorized, there is no procedural due process violation if a

meaningful post-deprivation remedy is available.  *Hudson* v. *Palmer*, 468 U.S. 517, 533, 104 S.

Ct. 3194, 82 L. Ed. 2d 393 (1984).  McGreal does not dispute that he challenges the "random and

unauthorized" actions of the defendants but argues that state law remedies are inadequate to

address the alleged due process violations that occurred both before and after his termination.  A

state law remedy is not inadequate unless it "can readily be characterized as inadequate to the

point that it is meaningless or nonexistent, and, thus, in no way can be said to provide the due

process relief guaranteed by the fourteenth amendment."  *Easter House* v. *Felder*, 910 F.2d 1387,

1406 (7th Cir. 1990) (en banc).

With respect to any post-termination claims, defendants argue that McGreal has at his

disposal adequate state law remedies to review the arbitration hearing and the defendants'

conduct during it.  Specifically, they contend that the Uniform Arbitration Act, which McGreal is

already making use of, provides for review of the arbitrator's decision.  To the extent that

McGreal is challenging decisions made by the arbitrator, and not by defendants, those challenges

are not properly cognizable under § 1983 against the defendants in this case and must be made

according to the procedures set forth to vacate an arbitration award.[5] *See Papapetropoulous* v. *Milwaukee Transport Servs., Inc.*, 795 F.2d 591, 596 (7th Cir. 1986) (where independent arbitrator, and not defendant, made decisions that allegedly deprived plaintiff of his due process rights at the hearing, court was "at a loss to understand how the plaintiff can argue that [defendant] is the party responsible in a section 1983 action for the decisions of the independent arbitrator"); *Ewing* v. *City of Monmouth, Illinois*, No. 06-1164, 2007 WL 2680823, at *3 (C.D. Ill. July 18, 2007). As for McGreal's allegation that defendants withheld exculpatory evidence during the arbitration hearing, that is something that also should have been raised in a motion to vacate the arbitration award. An arbitration award may be vacated if it "was procured by corruption, fraud or other undue means." 710 Ill. Comp. Stat. 5/12. If the award is vacated on the basis that defendants withheld evidence, McGreal will have the right to a new hearing to determine whether there was just cause for his termination in which he could use any such exculpatory evidence. Because this would adequately address the alleged post-termination due

---

[5] McGreal may not be able to challenge the arbitral award, as the Illinois Supreme Court has held that "individual employees represented by a union should only be allowed to seek judicial review of an arbitration award if they can show that their union breached its duty of fair representation." *Stahulak* v. *City of Chicago*, 703 N.E.2d 44, 48, 184 Ill. 2d 176, 234 Ill. Dec. 432 (1998).

process violation, McGreal cannot proceed with his procedural due process claims related to the arbitration hearing.[6]

But McGreal's pre-termination claim that he was terminated prior to the arbitration hearing and was thus denied the right to respond to charges against him is not foreclosed by the existence of a state law remedy. McGreal has the right to a pre-termination hearing, although it need not be a full-blown hearing where adequate post-termination proceedings exist. *See Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Chaney* v. *Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 628 (7th Cir. 1995) ("[A]n adequate post-deprivation remedy does not necessarily preclude the requirement of a pre-deprivation hearing where such a hearing was feasible and practical."). Here, the CBA provides that discharge "may be imposed upon a post-probationary employee only for just cause," and that a pre-disciplinary meeting is required prior to the imposition or recommendation of discharge. Ex. A to First Am. Compl. §§ 19.2–19.3. The pre-disciplinary meeting must provide the employee and union representative with "the opportunity to informally discuss, rebut or clarify the reasons for contemplated disciplinary action." *Id.* § 19.3. The complaint's allegations

---

[6] Because the court has concluded that McGreal does not have a claim for procedural due process violations related to his arbitration hearing, the court need not address defendants' argument that the intracorporate conspiracy doctrine bars McGreal's § 1983 conspiracy claim. That claim relates only to the conduct of the arbitration hearing and is thus also dismissed.

suggest that no such pre-disciplinary meeting or other opportunity to respond to the charges occurred.

Although "the added benefits in this case of pre-termination notice and an opportunity to be heard are not huge" because an extensive post-termination hearing took place, "they are in no way insignificant." *Chaney*, 52 F.3d at 629; *Moore* v. *Shaw*, No. 07-1253, 2008 WL 2692123, at *5 (C.D. Ill. July 1, 2008) ("[E]ven if the post-deprivation grievance procedures are adequate, they do not retroactively cure insufficient pre-deprivation process."). *But see Michalowicz* v. *Vill. of Bedford Park*, 528 F.3d 530, 537 (7th Cir. 2008) (where post-termination hearing was available, alleged pre-termination hearing deficiencies were not valid grounds for due process claim). Because due process is a "flexible concept" and the "requirements applicable to a particular situation are highly fact-specific," *Fenje* v. *Feld*, 301 F. Supp. 2d 781, 799 (N.D. Ill. 2003), at this stage, McGreal's claims alleging pre-termination violations of his due process rights will not be dismissed. *See Chaney*, 52 F.3d at 630; *Stimeling* v. *Bd. of Educ.*, No. 07-13302008 WL 2876528, at *7 (C.D. Ill. July 24, 2008).

## V.    *Monell* **Claim**

The Village may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694,

98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *Baxter* v. *Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir. 1994) (citing *Monell*, 436 U.S. at 690–91).

McGreal alleges that the Village has a long-standing practice of failing to adequately train, supervise, and discipline its employees. He also alleges that McCarthy has final policymaking authority and that he deprived McGreal of his right to a fair and impartial hearing related to his termination. In his response, he claims he has alleged an express policy that an officer's termination is imposed once arbitration is requested, but no such allegation can be found in the first amended complaint.

The Village argues that McGreal's *Monell* claim must be dismissed because he has failed to adequately support his allegations of a practice or policy. McGreal, however, is not held to a heightened standard in pleading a *Monell* claim, even after *Twombly* and *Iqbal*. *See McCormick* v. *City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000) (citing *Leatherman* v. *Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)); *Riley* v. *Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010). "[A]n

official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley*, 682 F. Supp. 2d at 861 (citing *McCormick*, 230 F.3d at 325).

McGreal has at this stage sufficiently alleged at least one basis for *Monell* liability: that McCarthy is a final policymaker who caused the constitutional deprivations complained of. *See McGreal* v. *Ostrov*, 368 F.3d 657, 685–86 (7th Cir. 2004) (defendant police chief's initiation of termination proceedings against plaintiff actionable under *Monell* where municipality had conceded that police chief was municipal policymaker with respect to termination proceedings). Although McGreal will have to establish, by reference to applicable state or local law, that McGreal indeed was the final policymaker with respect to the Police Department's employment decisions, *see Argyropoulos* v. *City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008), his allegations are sufficient at this stage.

## VI.    Tortious Interference with Advantageous Business Relations[7]

To state a claim for tortious interference with advantageous business relations, McGreal must allege "(1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the expectation, (3) purposeful interference by the defendant that

---

[7] This tort claim is also commonly referred to as tortious interference with prospective economic advantage.

prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship, and (4) damage to the plaintiff resulting from the defendant's interference." *Atanus* v. *Am. Airlines, Inc.*, 932 N.E.2d 1044, 1048, 403 Ill. App. 3d 549, 342 Ill. Dec. 583 (2010). Defendants argue that McGreal's tortious interference claim should be dismissed because he had no reasonable expectancy of entering into a valid business relationship nor, by extension, can he establish that defendants purposefully interfered with that expectancy.

McGreal alleges that he had an expectation of being hired by several police departments he applied to after being terminated by the Village. But it is well established that "[t]he hope of receiving a job offer is not a sufficient expectancy" to allege a claim for tortious interference with a prospective employment relationship. *Anderson* v. *Vanden Dorpel*, 667 N.E.2d 1296, 1299, 172 Ill. 2d 399, 217 Ill. Dec. 720 (1996); *see also Myers* v. *Phillips Chevrolet, Inc.*, No. 04 C 0763, 2004 WL 2403126, at *3 (N.D. Ill. Oct. 26, 2004) ("Federal courts applying Illinois law have repeatedly applied *Anderson* to reject claims for intentional interference with prospective business advantage where the plaintiff does not have an actual job offer but instead has merely the hope of receiving a job offer.") (collecting cases). In *Anderson*, the plaintiff alleged that she was the "leading candidate" for a position, that she had been sought out for the position by the employer, and that she had been told her interviews had gone well and she would be recommended for hire. *Anderson*, 667 N.E.2d at 1299–1300. But the court stated that "favorable

comments of the type allegedly made [in *Anderson*] should not be regarded as giving rise to a legally protectible expectancy." *Id.* at 1300. In concluding that the allegations were not sufficient, the court did note that it was not determining that "in all cases a job applicant must have had a firm offer in hand to state a cause of action for intentional interference with prospective economic advantage." *Id.* at 1299.

*Anderson*, decided under Illinois's fact pleading rules, does not compel dismissal here. McGreal has alleged that he was ranked first on the Village of Mokena's eligibility list for police officers at a time when there was an opening and that he was not hired because of defendants' actions.[8] First Am. Compl. ¶ 111. This is not just McGreal's subjective belief that he was the "leading candidate" for the position; he alleges that he was in fact the first in line to be hired for the open position. Under the federal notice pleading standards, this is sufficient at this stage to demonstrate that he had a reasonable expectancy of employment with the Village of Mokena. *See James* v. *Intercontinental Hotels Grp. Res., Inc.*, No. 09-cv-781, 2010 WL 529444, at *4–5 (N.D. Ill. Feb. 10, 2010) (allegations sufficient to state reasonable expectancy in continued employment where plaintiff alleged she had an exemplary work record, consistently received

---

[8] In his response, McGreal claims he applied to nine police departments and had reached the final step with two departments. His first amended complaint only alleges applications to three police departments and that he reached a final stage with one.

positive performance evaluations, and had been promoted to an executive level position,

distinguishing cases decided under Illinois's fact pleading rules).

McGreal has also at this stage sufficiently alleged the third element of a tortious

interference claim, that defendants purposefully interfered to prevent his hiring.  McGreal has

alleged that he "was denied the opportunity to be employed as a police officer due to the actions

of representatives of the Village of Orland Park."  First Am. Compl. ¶ 110.  Read in the light

most favorable to McGreal, this is sufficient to allege purposeful interference.  McGreal will

have to establish through discovery the actions defendants took to interfere with his expectancy

of employment with the Village of Mokena.

## VII.    Preemption of Breach of Contract Claim

Defendants further argue that McGreal's breach of contract claim for alleged CBA

violations is preempted by the Illinois Public Labor Relations Act ("IPLRA"), 5 Ill. Comp. Stat.

315/1 *et seq.*  McGreal argues that because federal labor law preempts inconsistent state labor

law, the IPLRA does not restrict the forum in which he can maintain his claim.  But the federal

Labor Management Relations Act expressly does not apply to public employers such as the

Village.  *See* 29 U.S.C. § 152(2).  Instead, "[t]he National Labor Relations Act leaves States free

to regulate their labor relationships with their public employees."  *Davenport* v. *Washington*

*Educ. Ass'n*, 551 U.S. 177, 181, 127 S. Ct. 2372, 168 L. Ed. 2d 71 (2007).  Because McGreal's

employer was the Village, "any claim involving the interpretation of [his] collective bargaining agreements arises under Illinois law, not federal law." *Marconi* v. *City of Joliet*, 989 N.E.2d 722, 728, 2013 IL App (3d) 110865, 371 Ill. Dec. 132 (2013). Therefore, the IPLRA governs whether McGreal's breach of contract claim may be maintained in this court.

The IPLRA's stated purpose is "to regulate labor relations between public employers and employees, including the designation of employee representatives, negotiation of wages, hours and other conditions of employment, and resolution of disputes arising under collective bargaining agreements." 5 Ill. Comp. Stat. 315/2. The IPLRA has been interpreted to confer exclusive jurisdiction on the Illinois Labor Relations Board over matters involving collective bargaining agreements between public employers and employees, including breach of contract claims. *See Proctor* v. *Bd. of Educ., Sch. Dist. 65, Evanston, Ill.*, 392 F. Supp. 2d 1026, 1031 (N.D. Ill. 2005); *Utomi* v. *Cook County*, No. 98 C 3722, 1999 WL 787480, at *5 (N.D. Ill. Sept. 24, 1999); *Cessna* v. *City of Danville*, 296 Ill. App. 3d 156, 162–68, 230 Ill. Dec. 513, 693 N.E.2d 1264 (1998). McGreal's breach of contract claim is founded on defendants' alleged failure to comply with the CBA. *See* First Am. Compl. ¶ 155. Allowing this claim to go forward here "would undermine the [IPLRA's] stated purpose and frustrate the legislature's intent to provide a uniform body of law in the field of labor-management relations to be administered by those who have the required expertise in this area." *Cessna*, 693 N.E.2d at 168. Since

McGreal's breach of contract claim cannot be addressed without interpreting the CBA, this claim belongs before the Illinois Labor Relations Board and will be dismissed.[9]

## VIII. *Colorado River* Abstention

Next, defendants urge the court to abstain from exercising jurisdiction over McGreal's declaratory judgment request pursuant to *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). McGreal seeks a declaration that the Village and McCarthy could not terminate McGreal's employment without a finding of just cause by an authorized trier of fact, that the arbitrator appointed pursuant to the CBA must meet the qualifications set forth in Section 5.3(a) of the CBA, and that by not meeting those requirements Stoia never had subject matter jurisdiction to conduct the arbitration hearing. Defendants argue that McGreal is seeking adjudication of the same issues in two state law forums—the Illinois Labor Relations Board and the Cook County Chancery Court—and that the court should avoid duplicative and piecemeal litigation by staying consideration of McGreal's declaratory judgment request.

---

[9] To pursue his breach of contract claim, McGreal would also have to claim that the union breached its duty of fair representation. *Utomi*, 1999 WL 787480, at *5 ("[U]nion members lack standing to sue for breach of a collective bargaining agreement unless they also claim that the union breached its duty of fair representation.").

The court need not reach the question of whether *Colorado River* abstention applies, however, for McGreal's declaratory judgment claim mirrors his breach of contract claim. The court has already determined that McGreal's breach of contract claim is within the exclusive jurisdiction of the Illinois Labor Relations Board. The same analysis applies to McGreal's declaratory judgment claim, which would involve determining the meaning of the CBA. Because the Illinois Labor Relations Board has exclusive jurisdiction over the matters raised in McGreal's declaratory judgment claim, that claim will be dismissed.

## IX. Official Capacity Suits against Individual Defendants

Finally, the individual defendants argue that McGreal's claims against them in their official capacities as Village employees should be dismissed as redundant. A suit against a public official in his "official capacity" is a suit against the entity of which that official is an agent. *Richman* v. *Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Because McGreal has named the Village as a defendant for his § 1983 claims, naming the individual defendants in their official capacities is superfluous. *See Jungels* v. *Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (where plaintiff sued the city, "nothing was added by suing the mayor in his official capacity"). Therefore, the official capacity claims against the individual defendants will be dismissed. *See Kiser* v. *Naperville Cmty. Unit*, 227 F. Supp. 2d 954, 960–61 (N.D. Ill. 2002) (dismissing claims

against individuals sued in their official capacities because they served "no legitimate purpose").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [#59] is granted in part and denied in part. All claims against the individual defendants in their official capacities are dismissed with prejudice. McGreal's § 1983 claims (counts I–III and V) are limited to alleged violations occurring on or after June 28, 2010. McGreal's procedural due process claim (count I) is dismissed with respect to allegations related to the arbitration hearing. McGreal's declaratory judgment claim (count IV) and breach of contract claim (count VII) are dismissed without prejudice to refiling before the Illinois Labor Relations Board. The individual defendants have absolute immunity for their testimony under oath during the arbitration hearing.

Defendants are given until August 23, 2013 to answer the first amended complaint. This case will be called for a status hearing and scheduling conference on September 26, 2013 at 8:30 a.m.

Dated: August 2, 2013                    ENTER:


_____
JOAN HUMPHREY LEFKOW
United States District Judge

26