IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH S. MCGREAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 5135 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| THE VILLAGE OF ORLAND PARK, ) | |
| TIMOTHY MCCARTHY, PATRICK ) | |
| DUGAN, and JAMES BIANCHI, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

In his second amended complaint,[1] Joseph McGreal alleges under 42 U.S.C. § 1983 that the Village of Orland Park (the Village) and three members of its Police Department (OPPD), Timothy McCarthy, Patrick Dugan, and James Bianchi, terminated his employment without a proper pre-termination hearing, in violation of his Fourteenth Amendment due process right (count I) and in retaliation for his union activities in violation of his First Amendment rights to freedom of association (count II) and speech (count III). (Dkt. 89.) He also alleges a *Monell* policy claim based on Chief McCarthy's longstanding practice of failing to adequately train,

---

[1] On August 2, 2013, this court granted in part and denied in part defendants' motion to dismiss McGreal's first amended complaint. In that ruling, the court limited McGreal's § 1983 claims (his Fourteenth Amendment, First Amendment, and *Monell* claims) to alleged violations occurring on or after June 28, 2010, further limited his Fourteenth Amendment claim by excluding allegations relating to an arbitration hearing conducted pursuant to a collective bargaining agreement, and dismissed his declaratory judgment and breach of contract claims without prejudice to refiling in the proper forum. (Dkt. 77.) On September 23, 2013, McGreal filed his second amended complaint against the Village and seven members of its police department (dkt. 89) but later dismissed four of them, leaving McCarthy, Duggan, and Bianchi as the only individual defendants (dkt. 178).

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

supervise, and discipline its employees (count IV),² as well as state law tort claims of interference with advantageous business relationship (count V), and intentional infliction of emotional distress (count VIII). (*Id.*) McGreal alleges that the Village is vicariously liable for the state law claims against its employees (count VI) and required under Illinois law to indemnify them for any judgment entered against them (count VII).³ (*Id.*) The defendants' motion for summary judgment on all counts is now before the court. (Dkt. 202.) For the reasons stated below, defendants' motion (dkt. 202) is granted.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether a genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or

---

² While McGreal's complaint makes allegations relating to a failure to train theory, his submission fails to address this claim in any meaningful way, such as with evidence suggesting a policy or practice of failing to train officers in a manner resulting in deprivation of constitutional rights. As such, this claim is considered abandoned.

³ The Local Governmental and Governmental Employees Tort Immunity Act (Illinois Tort Immunity Act), 745 Ill. Comp. Stat 10/9-102, directs local public entities to pay tort damages incurred by employees acting with the scope of their employment. The statute applies to federal as well as state law judgments.

make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## LOCAL RULE 56.1

Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to plaintiff. The court will address many but not all of the facts included in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with regular practice, it has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Preparation of this opinion has been made particularly difficult by plaintiff's counsel's failure to comply with Local Rule 56.1 in preparing and responding to statements of material facts. This court's standing order directs counsel to read *Malec* v. *Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000), before submitting summary judgment filings. Although counsel are not new to federal court litigation, they have apparently not recently reviewed *Malec*, since their

submissions are largely inconsistent with the helpful guidance in the case: (1) a response to a movant's statement of facts is neither the place for argument nor additional facts that do not actually dispute the factual statement; (2) "supporting documents submitted with a motion that are not referred to in the statement of facts will be ignored"; (3) the paragraphs in a statement of facts should be short and not argumentative or conclusory; (4) paragraphs also must contain specific references that support the factual allegation and the specific references provided should not be so voluminous that they send the court on a wild goose chase; and (5) the memorandum of law should cite back to the statement of facts as opposed to record citations. *See id.* at 583–86. Frankly, the motion could have been granted by simply rejecting plaintiff's Local Rule 56.1 submissions. The court has done its best, however, to winnow the facts to those supported by the record in order that the case can be resolved on the merits.

## BACKGROUND

Joseph McGreal was a full-time officer with OPPD from January 10, 2005 until June 28, 2010, when his employment was terminated. (Dkt. 215-1 (Defendants' Corrected Local Rule 56.1 Statement of Material Facts (Defs.' LR 56.1)) ¶ 1.) The events that form the basis for the issues before the court run from August 2009 through McGreal's termination approximately nine months later. During that period, Timothy McCarthy was OPPD's Chief of Police; Thomas Kenealy was Patrol Division Commander; Patrick Duggan and James Bianchi were lieutenants; Paul Grimes was Village Manager.

During 2008, McGreal was elected secretary of the Metropolitan Alliance of Police Local #159, the union representing the Village's police officers. (*See* dkt. 220-2, McGreal's Local Rule 56.1 Statement of Additional Facts (McGreal's LR 56.1) ¶ 1; *see also* Defs.' LR 56.1, Ex. G1 (dkt. 215-28) (McGreal to Kenealy, Step 1 Grievance #2010-06) at 1.) As a Local #159

4

member and leader, McGreal claims to have engaged in representation of several officers in grievance matters and in advocacy for the collective bargaining rights of union members. (McGreal to Kenealy, Step 1 Grievance #2010-06 at 1.)

Although McGreal had in all previous performance evaluations been favorably rated, at some point during 2009 conflict arose, leading to an "Interrogation" of McGreal on January 21, 2010, regarding certain instances of conduct on the job.[4] The first incident of consequence to this litigation occurred on August 20, 2009, and related to McGreal's conduct regarding whether he should represent another OPPD officer when that officer was lodging a complaint about a fellow officer. (*See* McGreal to Kenealy, Step 1 Grievance #2010-06 at 10; *see also* McGreal's LR 56.1, Ex. 253 (dkt. 220-20) at 25.) The parties have not pointed the court to evidence that any disciplinary investigation of the incident was initiated at that time. The next incident was an October 27, 2009 traffic stop of Charles Robson, which OPPD questioned as to whether the stop and follow-up paperwork were done properly. OPPD undertook an investigation of this incident on November 23, 2009. (*See* Defs.' LR 56.1 ¶ 32; *see also id.* Ex. C-57 (dkt. 215-13) at 18:22–19:16; McGreal to Kenealy, Step 1 Grievance #2010-06 at 7; McGreal's LR 56.1, Ex. 253 (dkt. 220-20) at 6; *id.* ¶ 16.)

Around the same time as the Robson stop, the Village made it publicly known that it was having financial difficulties (McGreal's LR 56.1 ¶ 7) and on November 2, 2009, it held a board

---

[4] Defendants' deny that McGreal's past work record was favorable, but McGreal's statement is accepted as true for the purpose of the motion. Defendants also contend, and McGreal contests, that this and other examinations were formal interrogations as defined by the Uniform Peace Officers Disciplinary Act. (*See, e.g.*, dkt. 220-3 (McGreal's Response to Defendant's Corrected Local Rule 56.1 Statement of Material Facts (McGreal's Resp. LR 56.1) ¶ 7.) While the court will continue to use the word "interrogation" to refer to these questioning sessions, it takes no position on whether the sessions themselves were formal interrogations as defined by that act.

meeting to discuss those difficulties (*id.* ¶ 9).[5] McGreal attended that meeting on behalf of Local #159 and presented written recommendations to eliminate certain newly-created, non-essential positions, eliminate the take-home squad car program for everyone but the Chief, Deputy Chief, and Investigations Lieutenant, and offer a new longevity benefit to police officers.[6] (*Id.* ¶ 11; *see also id.*, Ex. 74 (dkt. 220-16).) All of the individual defendants (McCarthy, Bianchi and Duggan) deny knowing that McGreal made this presentation, and McGreal does not dispute their denial. (Defs.' LR 56.1 ¶ 23; McGreal's Resp. LR 56.1 ¶ 23.)

In the days that followed the board meeting, three more incidents occurred. On November 5, 2009, McGreal was believed to have improperly run the license plate on Commander Kenealy's personal vehicle. (*See* McGreal's LR 56.1, Ex. 253 at 31–33; McGreal to Kenealy, Step 1 Grievance #2010-06 at 12–13.) On November 7, 2009, McGreal took part in a high-speed pursuit that his superiors considered unauthorized and reckless. (*See* Defs.' LR 56.1 ¶¶ 100–01.) McGreal participated in another pursuit on November 9, 2009, that was similarly characterized by OPPD as unauthorized. (Defs.' Resp. LR 56.1 ¶ 20.) McGreal contends that his conduct was not improper in either incident. (*See* McGreal's LR 56.1 ¶¶ 17, 20.)

At an unspecified time, these incidents became part of an OPPD investigation of McGreal's conduct which entailed an interrogation of McGreal on January 21, 2010. (*See* Defs.' LR 56.1, Ex. C-57 (dkt 215-13).) (There were other incidents subject to the investigation but these are identified because they are most relevant as they are closest in time to McGreal's

---

[5] The previous day, McGreal received a midyear evaluation that directed McGreal to "continue to maintain [his] current level of activity during the rest of the rating period." (McGreal's LR 56.1 ¶ 10.)

[6] Defendants dispute that McGreal attended the board meeting. (Dkt. 231 (Defendants' Response to McGreal's LR 56.1 Statement of Additional Material Facts (Defs.' Resp. LR 56.1) ¶ 11.) Their citations, however, only dispute whether the individual defendants (as well as the Village Manager) knew that McGreal attended and presented at the meeting. (*See id.*)

presentation to the Village Board.[7])

On January 21and March 24, 2010, McGreal was questioned regarding "each and every incident that ultimately led to his termination." (*Id.* ¶¶ 7, 9.) Prior to each of these interrogations, the Village provided McGreal with a written notice that identified the incidents that would be discussed.[8] (*Id.* ¶ 8,[9] Ex. C-57 at Ex. 1 (dkt. 215-16–17); *Id.*, Ex. C-66 at Ex. 1 (dkt. 215-22).) These interrogations resulted in 195 pages of sworn testimony from McGreal, in which he explained his version of the incidents. (*Id.* ¶ 9.) While the transcripts of the interrogations indicate that McGreal was represented by counsel, McGreal was not questioned by his attorney. (*See id.*, Ex. C-57 (dkt. 215-13), Ex. C-66 (dkt. 215-22).)

On April 21, 2010, Chief McCarthy provided McGreal with written notice of a pre-disciplinary meeting that identified sixteen incidents about which the OPPD was considering

---

[7] The incidents are not fully set forth in the parties' statements of facts, but those that were being considered prior to McGreal's termination are included in OPPD's June 2, 2010 statement of cause for termination. (*See* McGreal's LR 56.1, Ex. 253 (dkt. 220-20).) In total, the allegations consisted of (1) an improper traffic stop of Charles Robson on October 27, 2009, (2) an insufficient case report relating to that same event, (3) an unauthorized and reckless pursuit (the Alsip Pursuit), (4) an unauthorized and reckless pursuit (the Forest Preserve Pursuit), (5) ostracizing an employee on the OPPD's November 24, 2009 Awards Night, (6) ostracizing that same employee at that night's roll call, (7) improperly calling in sick, (8) improperly conducting himself during the representation of another officer (the Zorbas complaint), (9) making a false report of a superior, (10) leaving his beat and being idle while on duty, (11) failing to report for a court appearance, (12) running the license plate on Commander Kenealy's personal vehicle, (13) reporting late for duty, (14) lying at the January 21, 2010 interrogation, (15) interfering with the investigation of his conduct, and (16) failing to produce phone records as requested. McGreal disputed then and disputes in his additional statement of material facts whether these incidents were properly handled. (*See, e.g.*, McGreal's LR 56.1 ¶¶ 14–21, 25–27.) As explained below, whether OPPD handled them correctly is not before this court.

[8] McGreal disputes this paragraph of defendants' statement of facts, but his response is limited to stating additional information that does not actually rebut defendants' statement. (*See* McGreal's Resp. LR 56.1 ¶ 8.)

[9] Before the second of these sessions, on March 5, 2010, McGreal was placed on administrative leave. (Defs.' LR. 56.1 ¶ 57.) McGreal in this law suit challenges his termination, not being placed on administrative leave.

taking disciplinary action and the specific department policy violated. (*Id.* ¶ 10; *id.*, Ex. D. (dkt. 215-24).) The meeting occurred a week later, on April 28, 2010, and prompted McGreal to file a grievance that the meeting was an insufficient pre-disciplinary meeting because he had not been given an opportunity to review all of the evidence that the OPPD had to support its charges. (*Id.* ¶¶ 12–13.)

In response to McGreal's grievance, on June 2, 2010, McGreal, Chief McCarthy, and Commander Kenealy met to discuss the grievance. (*Id.* ¶ 14.)[10] During that meeting, the three discussed the charges and the general nature of the OPPD's evidence. (*Id.* ¶¶ 14–15.)[11] That same day, Chief McCarthy filed a statement of charges before the Board of Fire and Police Commissioners, seeking McGreal's termination. (McGreal's LR 56.1 ¶ 39.) After being charged, McGreal filed a grievance with OPPD in which he referenced his November 2, 2009 presentation, set forth his version of the sixteen incidents at issue, alleged violations by the OPPD of the collective bargaining agreement, and requested that all charges against him be dropped. (McGreal to Kenealy, Step 1 Grievance #2010-06.) Kenealy responded in writing,

---

[10] McGreal correctly points out that this meeting was not *per se* another pre-disciplinary meeting but was rather step 2 in McGreal's grievance relating to the April 28, 2010 pre-disciplinary meeting. (*See* McGreal's Resp. LR 56.1 ¶ 14.) That said, this court is less concerned with the formal title of the meeting and more concerned with its substance and documentation.

[11] McGreal improperly disputes defendants' summary of the meeting. (*See* McGreal's Resp. LR. 56.1 ¶ 14–15.) In his responses to these paragraphs of defendants' statement of facts, McGreal cites to a letter from his lawyer that preceded the meeting and additionally cites back to Chief McCarthy's summary of the meeting and states that parts of it are inaccurate. (*Id.*) He does not, however, provide any citations to the record in support of his assertion that the summary is inaccurate. (*Id.*) McGreal, likewise, raises no objections regarding the document's admissibility. (*See id.*). Further, even if McGreal had properly supported his dispute of these paragraphs, he still would have to address the fact that this summary, which is an internal memorandum from Chief McCarthy to McGreal, appears to have been received by McGreal on June 9, 2010. (*See* Defs.' LR 56.1 ¶ 14, Ex. F.) Therefore, even if the types of evidence were not discussed at the meeting, the memorandum itself identified the types of evidence that OPPD intended to rely on and would be admissible to show McGreal's knowledge. (*See id.*)

denying McGreal's grievance. (Defs.' LR 56.1, Ex. G-1 (dkt. 215-29).)

McGreal then advanced his grievance to step 2, and Chief McCarthy and Commander Kenealy met again with McGreal. (*Id.* ¶¶ 20–21.) Chief McCarthy again denied the grievance. (*Id.*, Ex. G1 (dkt. 215-30), McCarthy to McGreal, Step 2 Grievance #2010-06.) Meanwhile, McGreal elected to submit the charges against him to arbitration instead of proceeding with a hearing before the Board of Fire and Police Commissioners. (McGreal's LR 56.1 ¶ 40.) On June 28, 2010, McGreal was terminated, following the approvals of Chief McCarthy and Village Manager Grimes.[12] (*Id.*)

Thereafter, McGreal sought other work, and OPPD provided information to prospective employers authorized by releases given by McGreal to the OPPD. (Defs.' LR 56.1 ¶ 109.) McGreal knows of no information provided to these prospective employers other than as authorized in his releases. (*Id.* ¶ 111.)

## ANALYSIS

### I. Section 1983 Claims (Counts I–IV)

In order to prevail on a § 1983 claim, a plaintiff must establish that the defendant deprived him of a right secured by the Constitution or laws of the United States and that the defendant acted under color of state law. *Brokaw* v. *Mercer Cty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) (citations omitted). McGreal alleges that defendant state actors violated his Fourteenth Amendment right to procedural due process and his First Amendment rights to freedom of speech and association.

#### A. Fourteenth Amendment § 1983 Claims (Counts I, IV)

---

[12] There is some ambiguity in the testimony cited by the parties as to who made the final decision to terminate McGreal. In any event, defendants assert and McGreal does not dispute, that "the Village Manager is the final policy maker with respect to employment decisions." (Defs.' LR 56.1 ¶ 107; McGreal's Resp. LR 56.1 ¶ 107.)

9

To establish a claim for violation of procedural due process under the Fourteenth Amendment, a plaintiff must prove "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz* v. *Vill. of Bedford Park,* 528 F.3d 530, 534 (7th Cir. 2008). Concerning (2), "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful matter.'" *Mathews* v. *Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)). "[A] 'procedure required by contract, statute, or regulation does not create a constitutionally protected right nor does violation of a contract, statute, or regulation, by itself, constitute a violation of due process.'" *Harris* v. *City of Chicago*, 665 F. Supp. 2d 935, 951 (N.D. Ill. 2009) (quoting *Fenje* v. *Feld*, 301 F. Supp. 2d 781, 802 (N.D. Ill. 2003). Rather, the right is "flexible, requiring different procedural protections depending upon the situation at hand." *Doyle* v. *Camelot Care Ctrs., Inc.*, 305 F.3d 603, 618 (7th Cir. 2002).

Defendants agree that McGreal had a "protected interest" in his employment with OPPD, but they contend that there is no genuine issue of material fact that McGreal received all the pre-termination process that was due, and more.[13] In response (*see* dkt. 220-1 at 19–25), McGreal does not clearly articulate a theory but it seems to be that Chief McCarthy imposed discipline (in this case termination) once McGreal asked for arbitration and before a "fair hearing" occurred,[14]

---

[13] This court previously dismissed McGreal's procedural due process claim to the extent that it was based on the post-deprivation procedures. (Dkt. 77 at 13–16.)

[14] McGreal relies on provisions of the Village's Municipal Code and the collective bargaining agreement to define his due process rights. The referenced ordinance allows a Chief of Police to suspend an officer up to thirty days without pay. The collective bargaining agreement permits discipline, including discharge, to be imposed only for just cause and requires that, before a decision to impose or recommend discipline, including discharge, the Chief of Police is to notify the union and meet with the employee involved (and a representative if

10

arguing that this practice is contrary to the collective bargaining agreement and the Orland Park Municipal Code. In due process terms, he seems to be asserting that McCarthy as a final policy maker denied him due process on the basis that he terminated McGreal's employment before the arbitrator decided his case.[15] Under this theory, a full-blown arbitration hearing (or police board hearing) was necessary in order to comport with due process. This reflects a fundamental misunderstanding of the due process clause. As indicated above, whether a state or local code or a collective bargaining agreement was violated is immaterial to one's claimed denial of a pre-termination hearing consistent with due process, so the court will address the issue of whether McGreal received the pre-termination process that was due.

A pre-deprivation hearing need not be a full-blown hearing where adequate post-termination proceedings exist. *See Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Chaney* v. *Suburban Bus Div*. *of Reg'l Transp. Auth.*, 52 F.3d 623, 628 (7th Cir. 1995). The case law refers to such a hearing as "truncated," and even the word hearing is perhaps a misnomer, since the notice and opportunity to be heard may be oral or written. *See Hudson* v. *City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004) (noting that the plaintiff's opportunity to respond conformed with due process when he was given the chance to submit a memorandum to contest the charges against him). "In its truncated form, 'pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.'" *Michalowicz*, 528 F.3d at 537 (quoting *Gilbert* v. *Homar*, 520 U.S. 924, 929, 117 S. Ct. 1801,

---

requested), inform the employee of the reasons for the contemplated action, and give the employee the opportunity to informally discuss, rebut or clarify the reasons for the action. (*See* dkt. 220-1 at 21.)

[15] Although cast as a *Monell* claim, there is no evidence of policy and practice other than McGreal's *ipse dixit*.

138 L. Ed. 2d 120 (1997)). If McGreal has been afforded each of these three steps, then he has received all of the process due.

The doctrine makes it clear that, whatever the more comprehensive hearing rights McGreal may have had under the collective bargaining agreement or the Village Code, all that was constitutionally required was provided to McGreal. As far as the court can discern, on April 21, 2010, he was notified of the contemplated termination, the reasons for it, and that he was to appear for a hearing on April 28, 2010, to discuss the specific bases OPPD relied on for its planned action. McGreal attended the meeting and, dissatisfied, asked for more documentation. Chief McCarthy arranged another meeting on June 2, at which time at least some of the evidence on which OPPD intended to rely at an anticipated hearing before the Board of Police and Fire Commissioners was shown to him and discussed.[16] On June 10, McGreal filed a grievance in which he contested each and every one of the charges and asked for the charges to be dismissed against him. Commander Kenealy considered this request and rejected it. McGreal appealed that decision to Chief McCarthy, who again rejected the request. In sum, McGreal was provided with notice of the reasons for his termination, an explanation of the evidence supporting it, and an opportunity to tell his side, all before he claims to have been terminated on June 21, 2010. This is undoubtedly consistent with the requirements of pre-deprivation

---

[16] The procedure in place for termination of Orland Park police officers is not clear from the parties' submissions. Presumably, they are explicit within the collective bargaining agreement and Illinois municipal law and rules of the Board of Police and Fire Commissioners. The court infers from the record that the Board had the final authority to terminate McGreal, subject to administrative review. Alternatively, however, the collective bargaining agreement must have permitted an officer to submit the proposed termination to arbitration, as that is what McGreal did. It is implied that the termination occurred (presumably once McGreal was no longer on the payroll) by the end of June, possibly once he elected arbitration, such that the arbitration was within the realm of "post-termination procedure" for purposes of the due process clause. There is no basis in the due process clause for the argument that OPPD had to keep him employed pending a final determination.

procedural due process.

Accordingly, defendants are granted summary judgment on counts I and IV.

B.     **First Amendment § 1983 Claims (Counts II, III)**

McGreal asserts that defendants violated his constitutional rights by punishing him for exercising his First Amendment rights when he presented written suggestions to the Village Board on November 2, 2009. (Dkt. 220-1 at 8.) To survive summary judgment on a First Amendment punishment claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell* v. *Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (citing *Massey* v. *Johnson*, 457 F.3d 711, 716 (7th Cir. 2006); *see also Hawkins* v. *Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014); *Peele* v. *Burch*, 722 F.3d 956, 959 (7th Cir. 2013). Only the third element is at issue, as defendants concede that McGreal engaged in protected speech and that discharge from employment is likely to deter free speech.

In *Greene* v. *Doruff*, the Seventh Circuit set forth the standard for analyzing causation:

> [A] plaintiff need only show that a violation of his First Amendment rights was a "motivating factor" of the harm he's complaining of, and that if he shows this the burden shifts to the defendant to show that the harm would have occurred anyway— that is, even if there hadn't been a violation of the First Amendment—and thus that the violation had not been a "but for" cause of the harm for which he is seeking redress.

660 F.3d 975, 977 (7th Cir. 2011); *see also Kidwell*, 679 F.3d at 964–65; *Hawkins*, 756 F.3d at 996 n.10; *Peele*, 722 F.3d at 960.[17] McGreal may establish causation through either direct or

---

[17] In certain formulations, the Seventh Circuit has also noted that if the defendant shows that the harm would have occurred anyhow, the burden shifts back to the plaintiff to show that the proffered reason was pretextual. *See Thayer* v. *Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012); *see also Hawkins*, 756 F.3d at 996 n.10. Similarly, the Seventh Circuit has also

13

circumstantial evidence. "Importantly, regardless of which type of evidence is offered, [t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Kidwell*, 679 F.3d at 965 (alterations in original) (internal quotation marks and citations omitted).

The individual defendants all deny knowing of McGreal's protected speech. McGreal does not dispute this denial. "[T]o establish that a defendant retaliated against a plaintiff because of a protected constitutional right, a plaintiff must demonstrate that the defendant knew of the retaliation and knew of the plaintiff's constitutional activities." *Stagman* v. *Ryan*, 176 F.3d 986, 999 (7th Cir. 1999); *see also O'Connor* v. *Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech."); *Malec*, 191 F.R.D. at 589 ("Because [the plaintiff] has produced no evidence that these defendants knew about his allegedly protected activities, he cannot, as a matter of law, establish a triable issue of a First Amendment violation . . . .").

McGreal relies on circumstantial evidence of suspicious timing to rebut the defendants' showing. In that context, the Seventh Circuit has explained that "[c]ircumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group. . . . [S]uspicious timing will rarely be sufficient in and of itself to create a triable issue" because "the timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Kidwell*, 679 F.3d at 966 (citations and internal quotation marks omitted). At a minimum, for suspicious timing to support an inference of causation, the adverse employment action must

---

articulated the causation factor as requiring a plaintiff to show that "her protected speech was a but-for cause of the employer's action." *Diadenko* v. *Folino*, 741 F.3d 751, 755 (7th Cir. 2013).

follow "close on the heels of protected expression, and the plaintiff [must] show that the person who decided to impose the adverse action knew of the protected conduct." *Id.* (quoting *Lalvani* v. *Cook Cty.*, 269 F.3d 785, 790 (7th Cir. 2001)) (alteration in original).

Applied to McGreal's First Amendment claim these principles demonstrate that, because McGreal cannot show that the defendants knew of the protected speech until *after* McCarthy initiated disciplinary investigations that led to the discharge,[18] he cannot survive summary judgment based on suspicious timing. To the extent McGreal contends that circumstantial evidence can also be found in evidence that the OPPD disciplined him more severely than others who committed the same transgressions, he fails to support his assertions with the record,[19] and his legal authority supports general propositions of law without an analysis of the facts of this case. *See Malec*, 191 F.R.D. at 586 ("A legal standard, even if correct, is useless to us unless applied to the facts of the case, particularly if it is a broad legal standard . . . .").[20] McGreal cites law arising in the context of retaliation under Title VII, but even there he has proffered no evidence of ambiguous oral or written statements or comments directed at him or other

---

[18] At some point McCarthy must have become aware that McGreal engaged in protected speech, since McGreal included it within his grievances. There is no evidence, however, that McCarthy had any indication of McGreal's speech until McGreal himself brought it to his attention as a reason for why McGreal believed he was *already* being unfairly treated.

[19] McGreal's unsigned affidavit provides only minimal foundation for a spreadsheet on which he relies for this argument. The spreadsheet, however, even if received in evidence, does not identify a similarly situated officer or show unequal treatment for equal transgressions. *Cf. Harris* v. *City of Chicago*, 665 F. Supp. 2d 935, 956 (N.D. Ill. 2009) ("Statistical evidence is only helpful when the plaintiff faithfully compares one apple to another.").

[20] McGreal also makes two other generalized arguments, which can be swiftly dispatched. First, he argues that the outcome of the investigation was predetermined. His proffered support for this argument, however, is that the investigation of his hostile work environment grievance was predetermined, not the OPPD's investigation of his conduct as a police officer. Second, McGreal argues that the investigation was ludicrous and discusses the Charles Robson traffic stop; however, his argument is not adequately supported by his citations and merely shows that he disagrees with OPPD.

employees that would suggest that hostility to his union activities was a motivating factor. *See Harden v. Marion Cty. Sheriff's Dept.*, 799 F.3d 857, 862–63 (7th Cir. 2015) (concerning retaliation under Title VII).

To find in his favor, a jury would have to infer that McGreal, who had represented union members in grievance matters for a significant period in the past without consequence from OPPD and who had attended Village meetings in the past on behalf of the union without consequence, nevertheless faced retaliation after he appeared at the November 2009 meeting with a proposal that seems to have been at least largely, if not entirely, rejected by the Village Board, setting into motion the subterfuge of an elaborate, lengthy investigation of his on-the-job conduct, culminating months later in a notice of contemplated termination. On these facts a reasonable jury could not find that McGreal's protected speech was a but-for reason for his termination.

While McGreal disputes that he was properly disciplined or that he committed some of the alleged conduct, he does not present evidence other than his own opinion that suggests that defendants did not believe the reasons they gave for McGreal's termination. It is not this court's job "to second-guess the employer's decision" but rather to determine whether defendants terminated McGreal because of his protected speech. *Stagman*, 176 F.3d at 1002; *see also Kidwell*, 679 F.3d at 969 ("[W]e look for pretext in the form of a dishonest explanation, a lie rather than an oddity or an error." (internal quotation marks and citations omitted)). On the record before the court, McGreal's assertions that defendants terminated McGreal because of his protected speech are purely speculative. Speculation is not sufficient to survive summary judgment.

Accordingly, defendants are granted summary judgment on counts II and III.

## II. Tortious Interference with Advantageous Business Relations (Count V)

To state a claim for tortious interference with advantageous business relations, McGreal must allege "(1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the expectation, (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship, and (4) damage to the plaintiff resulting from the defendant's interference." *Atanus* v. *Am. Airlines, Inc.*, 932 N.E. 2d 1044, 1048, 403 Ill. App. 3d 549, 342 Ill. Dec. 583 (1st Dist. 2010).

Defendants have offered evidence that the only documents that they provided to potential employers were those that were provided pursuant to a release of liability. McGreal does not contest this factual statement and completely abandons any discussion of this claim in his brief. Since McGreal has provided no evidence in support of his claim, this court is compelled to grant summary judgment to defendants.

Accordingly, defendants are granted summary judgment on count V.

## III. Intentional Infliction of Emotional Distress (Counts VIII)

To establish an intentional infliction of emotional distress claim under Illinois law, McGreal must show that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El* v. *Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 863–64 (7th Cir. 2010) (citing *Kolegas* v. *Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* at 864 (quoting *Kolegas*, 607 N.E.2d at 211). While McGreal does address this claim in his

brief, he does not do much more than state that he "has ample evidence to establish his" claim. (Dkt. 220-1 at 25.) Nowhere in McGreal's statement of facts does he support the elements of this claim, including providing any factual support for his assertion of severe emotional distress.

Accordingly, defendants are granted summary judgment on count VIII.

IV.     **Respondeat Superior And Indemnification Under Illinois Law (Counts VI, VII)**

Neither McGreal's *respondeat superior* nor indemnification counts provide an independent basis for liability. Since this court has granted summary judgment to defendants on all of McGreal's other counts, summary judgment is proper for these counts as well.

Accordingly, defendants are granted summary judgment on counts VI and VII.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion for summary judgment (dkt. 202) is granted, and the case is dismissed in its entirety.

Date: April 15, 2016

_____
U.S. District Judge Joan H. Lefkow