IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH S. McGREAL, | ) | |
|       Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 12 cv 05135 |
| THE VILLAGE OF ORLAND PARK, an Illinois Municipal Corporation and a body politic, and Chief of Police TIMOTHY McCARTHY, Individually, Lieutenant PATRICK DUGGAN, Individually, and Lieutenant JAMES BIANCHI, Individually, | ) ) ) ) ) ) ) | Hon. Joan Humphrey Lefkow, Judge Presiding.<br><br>Hon. Sidney I. Schenkier, Magistrate Judge. |
|       Defendants. | ) | |

**DEFENDANTS' MOTION FOR AWARD OF
ATTORNEYS' FEES PURSUANT TO 42 U.S.C § 1988**

Defendants Village of Orland Park and Patrick Duggan, by their attorneys Lance Malina and John Allen Wall of Klein, Thorpe and Jenkins, Ltd., and defendants Timothy J. McCarthy and James Bianchi, by their attorneys Michael J. Wall and Robin K. Powers of Rothschild, Barry & Myers LLP, state for their Motion for Award of Attorneys' Fees Pursuant to 42 U.S.C. § 1988:

**Introduction[1]**

Plaintiff Joseph S. McGreal ("McGreal") filed this lawsuit on June 27, 2012. After 3 years of extensive discovery, including 12 depositions taken by McGreal, 294 requests to produce issued by McGreal and several discovery motions brought by McGreal, McGreal was unable to support the critical elements of his claims. Despite several admonishments during the litigation from defense counsel regarding the merits of his case, McGreal continued to proceed

---

[1] Defendants are aware of the requirements of LR 54.3 and attempted full compliance with those obligations. Plaintiff's counsel has, however, refused to participate in the processes set out in the rule. See Exhibits 1, 2 and 3 attached hereto.

until the Court awarded summary judgment to all the defendants on all of McGreal's claims on April 15, 2016. On May 24, 2016 the Court also denied McGreal's Motion for Reconsideration. As shown by the record, McGreal's lawsuit was filed without adequate factual and legal foundations. It was based on McGreal's speculations and unfounded suspicions that the Orland Park Police Department was out to get him for his union activity, when in fact he was terminated due to his dishonesty, insubordination and conduct that was dangerous to the general public. For the reasons stated herein, the defendants should be awarded their attorneys' fees incurred in the defense of this matter.

## **The Applicable Legal Standards**

Section (b) of 42 U.S.C. § 1988 states that in any action to enforce Section 1983 of Title 42 the Court may allow the prevailing party a reasonable attorneys' fee as part of the costs. A prevailing defendant is entitled to an award of attorneys' fees upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation. *Munson v Friske*, 754 F.2d 683, 696 (7th Cir. 1985). The defendants here are entitled to an award of attorneys' fees because McGreal's action lacked a reasonable foundation and Plaintiff and his counsel had more than sufficient information available to them to determine that before the lawsuit was filed.

## **McGreal's Pleadings and the Defendants' Motion for Summary Judgment**

The original Complaint listed nine counts, including claims of First Amendment violations and violations of various state laws. He sued the Village of Orland Park ("Village"), nine individual police officers of the Village's Police Department ("Department") and the Chief of the Department. The First Amended Complaint, filed *sua sponte* by McGreal, dropped four of the individual defendants but added another state law claim. Acting upon the defendants' Motion to Dismiss, the Court dismissed the First Amended Complaint, but allowed McGreal to

file a Second Amended Complaint. In the Second Amended Complaint McGreal alleged under 42 USC § 1983 that the defendants had terminated his employment without a proper pre-disciplinary hearing, in violation of his Fourteenth Amendment due process rights (Count I) and in retaliation for his union activities in violation of his First Amendment rights of freedom of association and speech (Counts II and III). He also alleged a *Monell* policy claim (Count IV) as well as state law claims for tortious interference (Count V) and intentional infliction of emotional distress (Count VIII). He also alleged, under theories of *respondeat superior* (Count VI) and "Indemnification" (Count VII), that the defendant Village had to pay any compensatory damage judgments entered against the individual defendants.

After satisfying McGreal's numerous and repetitive discovery demands, the defendants moved for summary judgment relying on the deposition testimony and records. Citing *Malec v Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000), the Court ruled first that the plaintiff's filings in response to the motion were so wanting that "Frankly, the motion could have been granted by simply rejecting plaintiff's Local Rule 56.1 submissions." (Docket No. 239, pg. 4). Despite the inadequate response to the motion, the Court went on, however, to consider the facts that were supported by the record. As shown below, the failure of McGreal's response resulted from the lawsuit's lack of merit, and the mishmash of a response was filed to cover up the lack of merit in a case that never should have been filed.

1. **McGreal's Claim For Violation of His Due Process Rights And His *Monell* Claim Were Frivolous, Unfounded and Without Foundation.**

As to McGreal's due process claims in connection with the pre-disciplinary hearing, the Court found that McGreal's response to the motion for summary judgment did "not clearly articulate a theory" (Opinion, pg. 10) but what he did say reflected "a fundamental misunderstanding of the due process clause." (Opinion, pg. 11). For instance, the defendants'

3

Statement of Facts (Docket No. 215) filed with their Motion for Summary Judgment stated that McGreal had been given written notice of the matters that would be discussed at his pre-disciplinary meeting, and he had two person-to-person meetings to allow him to address those matters. McGreal's LR 56.1 response (Docket No. 220) disputed that statement, but the Court found that his response was "limited to stating additional information that does not actually rebut defendants' statement." (Opinion, pg. 7, n. 8). Other defects in McGreal's response on this issue were also detailed by the Court. (Opinion, pg. 8, n. 11). McGreal attempted to assert his due process claim as a *Monell* policy claim, but the Court found that McGreal had offered "no evidence of policy and practice other than McGreal's *ipse dixit*." (Opinion pg. 11, n.15). McGreal had alleged in his Complaint a failure to train theory under *Monell*, but the Court found that his response to the Motion for Summary Judgment "fails to address this claim in any meaningful way" and was thus abandoned. (Opinion, pg. 2, n. 2). After further reviewing the merits the Court stated: "In sum, McGreal was provided with notice of the reasons for his termination, an explanation of the evidence supporting it, and an opportunity to tell his side, all before he claims to have been terminated on June 21, 2010. This is undoubtedly consistent with the requirements of pre-deprivation procedural due process. Accordingly, defendants are granted summary judgment on count I and IV." (Opinion, pp. 12-13).

**2.   McGreal's First Amendment Claims Were Frivolous, Unfounded and Without Foundation.**

McGreal's failures on his First Amendment claims were even more fundamental. Again citing to *Malec v Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000), and quoting from it, the Court pointed out that a plaintiff making such a claim had to establish at least a triable issue regarding the defendants' knowledge of the alleged protected speech. "Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the

protected speech … Because [the plaintiff] has produced no evidence that these defendants knew about his allegedly protected activities, he cannot, as a matter of law, establish a triable issue of a First Amendment Violation" (Opinion, pg. 14). McGreal's counsel was Malec's counsel and thus should have been well forewarned that he had to have a factual foundation for this basic element of this claim before proceeding on it. He did not. McGreal, like Malec, never put forth any evidence other than circumstantial evidence of suspicious timing between the protected speech and the discipline and that is not enough as the courts have repeatedly held. (*Kidwell v Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

McGreal could not prove that the defendants knew of his protected speech, or even how they could have known of it. He knew they were not present when he made it. He did not say he told them of it, nor that he knew that they were told of it by somebody else. McGreal said that Chief McCarthy knew of his speech but, as the Court found, "There is no evidence, however, that McCarthy had any indication of McGreal's speech until McGreal himself brought it to his attention as a reason for why McGreal believed he was *already* being treated unfairly." (Opinion, pg. 15, n. 18). McGreal argued that other members of the Department were disciplined less severely than he was, but he failed to provide admissible evidentiary support for that argument and his supporting citations of legal authorities were done without any analysis of the facts of the cases. (Opinion, pg. 15).

From beginning to end, McGreal had nothing but his own notion that the defendants did not believe the reasons they cited for his termination. McGreal said he made his speech at a Village Board meeting, but even the Mayor, the Village manager and the two Village Trustees who were present and who McGreal deposed, testified that they had no recollection of his speech. His presence at the meeting did not even appear in the minutes of the meeting. As

the Court ruled in granting summary judgment on Counts II and III, "On the record before the Court, McGreal's assertions that defendants terminated McGreal because of his protected speech are purely speculative." (Opinion, pg. 16).

3.  **McGreal's Claims In Counts V, VI, VII and VIII Were Frivolous, Unfounded and Without Foundation.**

McGreal's foundations for his claims in Counts V, VI, VII and VIII were even less adequate. McGreal claimed in Count V that his chances to find other employment after his termination were interfered with by the defendants. The defendants offered proof that the only documents they provided to any potential employer of McGreal were documents that were provided pursuant to a written request by McGreal and a signed release from McGreal. McGreal did not dispute those facts and abandoned this claim by not even discussing it in his response to the motion for summary judgment.

McGreal's defense of his claim in Count VIII, that the defendants were guilty of intentional infliction of emotional distress, was also without substance. After asserting in his response that he had "ample evidence to establish" his claim, all he could cite to was his own deposition testimony that he was stressed, anxious and lost sleep. He could not support the basic elements of this claim by "providing any factual support for it" as the Court stated. (Opinion, pg. 18).

4.  **The Bringing Of This Lawsuit Was A Waste of Resources and Abusive.**

Prior to the filing of this lawsuit, McGreal had requested as a contract right arbitration over the correctness of his termination. He was represented by counsel during the entire course of that proceeding, which dealt with the same issues addressed here. The arbitration hearing lasted for 17 days, during which 183 exhibits were admitted. During the discovery related to the arbitration, over 5,000 documents were produced to McGreal and he

reviewed thousands of emails produced by the Department. (Exhibit 4). In the end, the arbitrator issued a 43-page ruling sustaining 75 of the 76 disciplinary charges that had been filed by the Department against McGreal. A copy of the Arbitrator's decision is attached hereto as Exhibit 5. McGreal testified in his deposition that almost every witness called at the arbitration was a liar, but the arbitrator found that McGreal was a liar, a cheat and had made frivolous complaints about his treatment. (Exhibit 6).

Despite the outcome of the arbitration, McGreal proceeded heedlessly with this lawsuit and after three years of substantial discovery initiated by McGreal, he still had no support for his claims. The defendants are not required to show either subjective or objective bad faith, but it could be found here. *Hamer v County of Lake*, 819 F.2d 1362, 1366 (7th Cir. 1987). Given the record it is apparent that McGreal did not have a reasonable belief in his claims and he proceeded only with the intent to try to intimidate the defendants into letting him have his own way. Given his extensive and serious disciplinary record, he was never going to prove that the reasons given for his termination were pretextual or not worthy of belief. When given a direct order to turn over records of his cell phone because of a reported hit and run accident involving his personal car, he transferred the phone to his mother's name. When the phone records were then subpoenaed from McGreal's mother, she sued the Village, one of the Village attorneys, the Chief of the Department, AT&T, Illinois Bell and the arbitrator who authorized the subpoena. (*McGreal v AT&T Corp.*, 2011 cv 8317).

Perhaps the best example of his distorted thought process and attitude was his reaction to being disciplined for engaging in unauthorized high speed chases in his patrol car. In his response to the motion for summary judgment he said that the defendants should have accepted this conduct because he was an "aggressive" officer. So McGreal was never wrong,

according to McGreal, and he took that approach to this litigation.  He took 12 depositions, including those of every defendant, the Mayor of the Village, the Village Manager, the head of the Village's Human Resources Department and two of the Village Trustees.  He issued 294 requests to produce, demanding and receiving the production of tens of thousands of pages of personnel records of the defendants and other officers, computer records, emails and numerous other categories of records.  He demanded and received forensic searches of the defendants' computers.  After three years of grinding on the defendants he still had nothing but his own innuendo and speculations to rely on.

Even if the plaintiff had any reasonable foundation for the initial filing of this case, his counsel had to know it was groundless after McGreal's deposition was taken.  It was the first deposition taken in this case.  When asked for the factual basis for his claims he either dodged the questions or said he would find the proof in discovery.  (Exhibit 7).  Defendants' counsel communicated to plaintiff's counsel several times, to no avail, that the plaintiff was proceedings on frivolous ground (Exhibit 8) and that the plaintiff's responses to their written discovery requests were evasive and improper (Exhibit 9).

Although McGreal failed to properly and adequately respond to the defendants' Motion for Summary Judgment, McGreal pressed ahead with a motion labeled Plaintiff's Motion To Reconsider With Supporting Case Law.  This was nothing more than an oversized rehash of arguments he previously made, containing 40 footnotes referring to the documents he had filed previously in response to the Motion for Summary Judgment.  He did not offer any new evidence and he did not establish any error of law or fact by the Court.  Moreover, he did not even acknowledge the critical point that the defendants testified that they were unaware of his alleged

protected speech until after the discipline of him had begun. The weakness and futility of the motion can be seen by the Court's denial of it without any response from the defendants.[2]

**5.     An Award Of Attorneys' Fees Is Also Warranted As A Sanction Under Rule 11 As Alternative Or Additional Relief For The Defendants**.

In the Motion For Reconsideration McGreal's counsel acknowledged his role as plaintiff's counsel in the *Malec* case. He also stated that "the *Malec* case is often cited by other judges of the [sic] federal court." (Motion for Reconsideration, Docket No. 241, pg. 4) The only reason he offered for not following the rules was that he does not do that intentionally. *Id.*, pg. 6. That is no excuse at all for the accusations made against the defendants and certainly no excuse for forcing them to incur the attorneys' fees they had to pay.

The Seventh Circuit has stated that "an award of fees to the defendant is clearly appropriate to deter frivolous filings". *Coates v Bechtel*, 811 F.2d 1045, 1050 (7th Cit. 1987). As shown by the dismal record detailed above, sanctions have not worked so far, however, with plaintiff's counsel John DeRose. In *Cooper v Chicago Transit Authority*, 1996 WL 520855 (N.D. Ill. 1996), the Court said:

> Having found sanctionable conduct under Rule 11, the Court concludes that the CTA and ATUL 308 are entitled to reasonable attorneys' fees and costs incurred by the Plaintiffs' filing of the original and First Amended Complaints. These sanctions should be paid by attorney DeRose, as his lack of investigation into the law and the facts of the case was clearly unreasonable under the circumstances. Additionally, Mr. DeRose's continuation of this baseless litigation is equally as egregious. In sum, the original Complaint and First Amended Complaint lacked sufficient basis in law or fact and are frivolous.

---

[2] Plaintiff's Motion for Reconsideration exceeded the page limit allowed by LR 7.1. The defendants had no chance to object because he did not file any Notice of Presentment with the Motion as required by LR 5.3(b). Instead he sent it *ex parte* to the Court. The defendants prepared a Response to the Motion, a copy of which is attached hereto as Exhibit 10, and were waiting to file it if and when the Motion was noticed up by McGreal. Instead, the first thing that they received was the Court's Order denying the motion, unaware the Court had received the motion from McGreal.

> In determining what to consider as sanctions, the Court considers several principles underlying Rule 11. First, the deterrent effect of sanctions may impede Mr. DeRose from filing frivolous lawsuits in the future."

Mr. DeRose was also sanctioned in *Webb v CBS Broadcasting, Inc.*, 2011 WL 174338 (N.D. Ill. 2011); see also *Webb v CBS Broadcasting, Inc.*, 2010 WL 3937460 (N.D. Ill. 2010) and *Webb v CBS Broadcasting, Inc.*, 2011 WL 4501366 (N.D. Ill. 2011). As stated above and as shown in Exhibits 8 and 9, defendants' counsel repeatedly addressed the lack of merit in this case with plaintiff's counsel, but he refused to back down. He should now be held accountable.

## Conclusion

The amount of the attorneys' fees incurred in defense of McGreal's claims in this litigation, not including those incurred in the defense of the arbitration proceedings and the other litigation that he brought, is fairly estimated to be $540,000, all of which has been paid. Defendants request that the Court consider the merits of their request for attorneys' fees, grant that request and enter an order setting a time for the submission of the detailed materials in support of this request.

Respectfully submitted,

VILLAGE OF ORLAND PARK, PATRICK DUGGAN, TIMOTHY MCCARTHY and JAMES BIANCHI

By: /s/ Lance C. Malina

/s/ Michael J. Wall

| | |
|---|---|
| Lance C. Malina | Michael Wall |
| KLEIN, THORPE AND JENKINS, LTD. | ROTHSCHILD, BARRY & MYERS LLP |
| 20 North Wacker Drive, Suite 1660 | 150 South Wacker Drive, Suite 3025 |
| Chicago, Illinois 60606 | Chicago, Illinois 60606 |
| (312) 984-6400 | (312) 372-2345 |