IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH S. McGREAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   12 cv 05135 |
| | ) | |
| THE VILLAGE OF ORLAND PARK, an Illinois | ) | Hon. Joan Humphrey Lefkow, |
| Municipal Corporation and a body politic, and | ) | Judge Presiding. |
| Chief of Police TIMOTHY McCARTHY, | ) | |
| Individually, Lieutenant PATRICK DUGGAN, | ) | Hon. Sidney I. Schenkier, |
| Individually, and Lieutenant JAMES BIANCHI, | ) | Magistrate Judge. |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR AWARD OF
ATTORNEYS' FEES PURSUANT TO 42 U.S.C §1988

Now comes the Plaintiff, Joseph S. McGreal, by and through his attorney, John P. DeRose of John P. DeRose & Associates, and in response to defendant's motion for award of attorneys' fees pursuant to 42 USC §1988, states as follows:

I. Case Concerned Anything but Claims
That Were Frivolous, Unfounded and without Foundation [1]

In the instant motion, Defendants face a heavy burden, and must overcome the hurdle of not only the very important constitutional matters being litigated in the above-captioned cause, but also years of legal precedent supporting plaintiff's right to litigate such matters. Defendants contend that they are entitled to recovery of their attorneys fees because plaintiff did not prevail when this Honorable Court granted summary judgment in their favor. Defendants cavalierly argue that they

---

[1] Defendants' Motion, pp. 4, ¶2 and 6, ¶3.

1

"are entitled to an award of attorneys' fees because McGreal's action lacked a reasonable foundation and Plaintiff and his counsel had more than sufficient information available to them to determine that before the lawsuit was filed."[2] . It is respectfully suggested that "requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove [his] claim." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007). It is the very liberal Federal Rules of Discovery during the course of litigation and only after suit has been instituted that makes possible the discovery of sufficient information to prosecute claims regarding such important civil rights violations.

Although defendants have catalogued throughout their instant motion recurrent claims that plaintiff unfairly compounded discovery requests, plaintiff's institution of this suit and his discovery requests as he prosecuted his claims were actions taken in good faith, "not [as] a means of prolonging litigation, but rather of protecting legal rights-ranging from contract-based rights, collective-bargaining agreement, to statutory rights, to constitutional rights" *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 765, 109 S.Ct. 2732, 105 L.Ed.2d 639 (Sup.Ct.1989).

### A. Recovery under Section 1988 Normally Reserved for Plaintiff

Much to the chagrin of the defense trial bar, the palliative aspects of Section 1988 and its prescription awarding attorneys' fees are normally reserved for the plaintiff and his or her attorney if and when they prevail in enforcing and/or

---

[2] Defendants' Motion, p. 2.

2

protecting an important civil right. In *Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir.2003), Justice Easterbrook noted:

> Section 1988 has been treated as asymmetric-that is, prevailing plaintiffs recover their legal expenses but prevailing defendants do not. …[D]efendants recover legal expenses only if the suit is frivolous-in which event they would be entitled to recompense even without regard to a statute. … So § 1988 is exceptionally pro-plaintiff. (Internal citation omitted).

Having long worked in the civil rights arena, Plaintiff's counsel has often explained his understanding of the important benefits of § 1988 to potential clients as follows:

> Congress, to encourage attorneys to represent individual citizens without sufficient financial assets to secure able legal representation to prosecute a civil rights claim, often against much more solvent and financially stable governmental institutions and public employees of those institutions has determined that if, in fact, a civil rights violation has been proved, and the plaintiff's rights have been vindicated or protected, has authorized the court to award fees to the attorney for the prevailing plaintiff. The attorney can never share such fees with you even if they exceed the amount of your award. You may not think that is not fair, but it is still of tremendous value to you. If you hire me, I will be entitled to the proportional share of your award that is set out in our contingency fee agreement

3

>unless I can get that amount or more from the defendants pursuant to an order from the court. It often means that whatever award you might ultimately receive will belong exclusively to you. The Court will also often award you all case costs you expended to prosecute your claim. If we do not prevail, you will owe me nothing for my efforts. The court may also order you to pay all case costs defendant incurred in successfully defending against our lawsuit.

Plaintiff's attorney has taken this case on a contingency fee basis. He appreciates the risks and has accepted the possibility that he may well receive no compensation for years of work if the litigation is unsuccessful. Many of the defense counsel in the instant case have battled with plaintiff's counsel as amicably as possible and have done so in different cases several times over the years. Quite often, members of the defense bar-- including counsel for the moving defendants in this cause -- have advised plaintiff's counsel that their work in cases against him have been financially lucrative for them and they query when they will next be brought into a lawsuit by plaintiff's counsel.  Motions such as the instant one only serve to chill members of the plaintiffs bar from pursuing these important lawsuits-- litigation in which members of the defense bar have graciously acknowledge their gratitude that the lawsuit was instituted and pursued.

Plaintiff's counsel appreciates the unsettling condition that must be experienced by a defendant named in a federal civil rights suit and never abuses the

judicial system within which he works by filing such a suit for a frivolous, unfounded, or improper purpose. Plaintiff's counsel wishes to assure this Honorable court that such a nefarious purpose was not employed at any time in this case.

Justice Scalia wrote:

> "[A] prevailing plaintiff should 'ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " …
>
> Similarly, we held that even though the term "prevailing party" does not distinguish between plaintiffs and defendants, the principle would not be applied to a prevailing defendant. Unlike the Title VII plaintiff, we reasoned, the Title VII defendant is not "'the chosen instrument of Congress,' "…. Such an unequal disposition, we thought, "giving the private plaintiff substantial incentives to sue, while foreclosing to the defendant the possibility of recovering his expenses in resisting even a groundless action unless he can show that it was brought in bad faith," would so "distort" the "fair adversary process" that Congress could not lightly be assumed to have intended it. We thus concluded that the prevailing defendant could be awarded fees against the plaintiff whose suit was brought in good faith, but only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation (Internal citations and references omitted).

*Independent Federation of Flight Attendants*, *Id.*, at 759-60.

### B. Enforcement of Quite Substantial First Amendment Constitutional Rights

Perhaps the First Amendment was so designated because it was the most important in the minds of the framers of the Constitution at the time they were establishing the new country where they could speak, associate, and profess their politics and religion freely. The freedoms discussed in the First Amendment surely were at the top of the framers' conscience as they declared their independence and the establishment of the new nation. The First Amendment constitutional rights at issue in this cause are not frivolous in any way. Plaintiff contends that the

5

termination of his employment is actionable under 42 U.S.C. § 1983 and clearly recognized under United States Supreme Court and Seventh Circuit Court of Appeals precedent discussing retaliation in violation of First Amendment rights.

### C. Supreme Court and Seventh Circuit Case Law

### Continue to Distinguish the Applicability of *Garcetti v. Ceballos* When Public Employee Speaks about Matters of Public Concern Only

A public employee's speech will be protected by the First Amendment where he is speaking as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). However, where a public employee makes statements pursuant to his official duties, that speech is not protected. *Id.* at 421.

In *Lane v. Franks*, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014), Justice Sotomayor distinguished the applicability of *Garcetti* writing:

> *Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment.
> …
> It bears emphasis that our precedents dating back to *Pickering* have recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment.

*Id.,* at 2379.

### 1. Plaintiff Speaks on Matters of Public Concern

When the Village of Orland Park experienced a financial shortfall and was considering a reduction in police services to the citizens of the community to meet

6

the anticipated financial deficit, plaintiff appeared first at a meeting to which *he was invited* with the Mayor and Village Manager and suggested other alternatives to reduce the anticipated budgetary shortfall without reducing police services. Not satisfied that his suggestions and those of other police union members were being relayed to the Village Board of Trustees on this important matter of public concern, plaintiff appeared personally and delivered the suggestions in writing to The Village Board, the Mayor, and the Village Manager. The suggestions recommended that take-home squad cars for supervisors be eliminated and individuals already collecting a police pension and working in an administrative capacity be released before active patrol officers be terminated.

In order for a public employee's speech to be constitutionally protected, the employee must have been speaking (1) as a private citizen, (2) on a matter of public concern, and (3) the employee's interest in expressing such speech must outweigh the interest of the state in promoting effective and efficient public service. *See Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013); *Houskins v. Sheahan,* 549 F.3d 480, 490 (7th Cir. 2008). Although he was a police officer, plaintiff addressed the Village of Orland Park officials as both a private citizen and a police officer regarding an important matter of public concern, suggesting alternatives to a reduction in police personnel and services to the citizens of the community.

To establish a *prima facie* case of First Amendment retaliation, a public employee must show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation as a result of his protected speech that was sufficiently adverse to deter the exercise of free speech; and (3) his speech was a substantial or

7

motivating factor in the employer's decision. See *Graber v. Clarke*, 763 F.3d 888, 894–95 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Prior to the time that he presented his suggestions at the meeting of the Board of Trustees, plaintiff had enjoyed a stellar reputation as "the gifted officer" on the Orland Park Police Department as documented in his personnel file. Within the next 6 weeks after having made his suggestions, plaintiff was disciplined and scrutinized as no police officer in Orland Park before or since, and ultimately had his employment terminated.

### 2. Plaintiff Speaks As Union Representative for Other Police Officers

Once elected as Secretary of the Metropolitan Alliance of Police Local #159, plaintiff protested violations of the Collective Bargaining Agreement by Members of the Command Staff of the Orland Park Police Department and prophetically reported to his Union Executive Board:

> The targets on our backs may get bigger the more we do this stuff. But I don't care. It's time to do things right.

Plaintiff also came forward to represent other police officer union members as commands sought to interrogate and discipline them, and further sought to defend union activities under the Collective Bargaining Agreement.

It has long been a First Amendment protected right of a Police Officer who also happens to be an officer in his union to speak out on union matters and represent other officers of the union during investigation, interrogation, and disciplinary matters. Without making any personal attacks on his command, plaintiff, an experienced Village of Orland Park police officer spoke out in his

8

capacity as union representative is speaking out on a matter of public concern Compare *Graber v. Clarke and County of Milwaukee*, 763 F.3d 888, 894 (7th Cir. 2014).

### 3. Allegations of Plaintiff's Distress Not Lightly Made

Defendants assert that the claim of "intentional infliction of emotional distress, was also without substance".[3] It is respectfully suggested that as a result of the allegations and actions described in this litigation, Plaintiff's professional reputation as a law enforcement officer was devastated and his integrity was irreparably besmirched. The professional and financial ruin plaintiff continues to endure has caused him emotional distress.

### II. Bringing Suit to Enforce Important Civil Rights Not Abusive[4]

In the instant motion, defendants cavalierly and recklessly claim that "McGreal did not have a reasonable belief in his claims and he proceeded only with the intent to try to intimidate the defendants into letting him have his own way."[5] The very way in which defendants couch that assertion suggests that this was a lawsuit brought by "a spoiled child". The record does not in any way describe plaintiff in such a way for suggests such a supercilious conclusion. For years before the exercise of his First Amendment rights, he was often a highly decorated member of the Orland Park Police Department, acknowledged and honored by command, respected by other police officers, and appreciated by citizens of the community. Plaintiff's sudden fall from grace was not at all to be anticipated

---

[3] Defendants' Motion, p. 6, ¶3.
[4] Defendants' Motion, p. 6, ¶4.
[5] Defendants' Motion, p. 7.

immediately after he spoke out. Although defendants cite to "his extensive and serious disciplinary record"[6], the written record of plaintiff's accomplishments and his personnel file clearly show that a negative employment history as a law enforcement officer in the village of Orland Park does not and never did exist.

### III. No Rule 11 Sanctions or Award of Attorneys' Fees Is Warranted[7]

Although defendants argue that "an award of fees to the defendant is clearly appropriate to deter frivolous filings"[8], no such showing can be made in this case. Although plaintiff has not been able to persuade this Honorable Court at the summary judgment stage of this case of the merits of his claims, the allegations of this complaint are serious and were brought to right what plaintiff and his lawyer believe in good faith is a serious constitutional wrong.

In *Mars Steel Corporation v. Continental Bank, NA*, 880 F.2d 928, 932 (7 Cir.1989), Justice Easterbrook wrote:

> Rule 11 is not a fee-shifting statute in the sense that the loser pays. It is a law imposing sanctions if counsel files with improper motives or inadequate investigation. Under the American Rule on the allocation of attorneys' fees, each side bears its own expenses. Rule 11 ensures that each side really *does* bear the expenses of its own case—that the proponent of a position incurs the costs of investigating the facts and the law. … Rule 11 does not allow an award of sanctions just because things went poorly …. Sanctuary as a result of reasonable investigation ensures that counsel may take novel, innovative positions—that Rule 11 does not jeopardize aggressive advocacy or legal evolution.

---

[6] Defendants' Motion, p. 7.
[7] Defendants' Motion, p. 9, ¶4.
[8] Defendants' Motion, p. 9.

> Unlike the traditional fee-shifting statute, Rule 11 focuses on inputs rather than outputs, conduct rather than result. … Rule 11 creates duties to one's adversary and to the legal system, just as tort law creates duties to one's client. The duty to one's adversary is to avoid needless legal costs and delay. The duty to the legal system (that is, to litigants in other cases) is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error. Rule 11 allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution.

In *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 886 (7th Cir.1992), where the claims were neither frivolous nor raised for improper purposes, Justice Harlington Wood noted that defendants' were not persuasive in their argument that having won the summary judgment motion, they proved the plaintiff had not conducted a reasonable inquiry into the law and the facts. Defendants instant motion bears witness to the length and breadth and depth of the inquiry into both the law and facts plaintiff and his lawyer have conducted in this case.

WHEREFORE, plaintiff and his attorney respectfully moves this Honorable Court to enter an order denying defendants' motion for an award of attorney's fees and the imposition of sanctions pursuant Rule 11 of the federal Rules of Civil Procedure.

                                                   Respectfully submitted,

                                                   /s/John P. DeRose
                                                   John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com

## CERTIFICATE OF SERVICE

  I, John P. DeRose, hereby certify that on July 21, 2016, I electronically filed the aforementioned document through the Court's CMECF system, with a copy automatically served via the Court's CMECF system upon the following counsel of record:

| | |
|---|---|
| John Allen Wall | Michael J. Wall |
| Jason A. Guisinger | Rothschild, Barry & Myers LLP |
| Klein, Thorpe and Jenkins, LTD. | 55 West Monroe Street |
| 20 N. Wacker Drive | Suite 3900 |
| Suite 1660 | Chicago, IL 60603 |
| Chicago, IL 60606-2903 | |

                /s/ John P. DeRose
                John P. DeRose

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois 60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com